# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VILLANUEVA, Minor.

UNPUBLISHED
April 13, 2017

No. 333913
Ingham Circuit Court
Family Division
LC No. 14-001032-NA

Before: BORRELLO, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

Respondent-father appeals by right a June 21, 2016, trial court order terminating his parental rights to MINOR CHILD (d/o/b 8/17/2014) under MCL 712A.19b(3)(h), MCL 712A.19b(3)(g), MCL 712A.19b(3)(j) and MCL 712A.19b(3)(i). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Respondent-father is the biological father of eight children including the minor child who is the subject of this appeal. Respondent-father's parental rights to five other children were previously terminated in Eaton County. At the time of his birth, the minor child suffered from withdrawal symptoms and had a Finnegan score between 12 and 8. Respondent-mother admitted to using heroin while she was pregnant with the minor child. On August 20, 2014, the Department of Health and Human Services (DHHS), filed a petition to remove the minor child from respondent-mother's care. The petition alleged that respondent-mother tested positive for methamphetamine, heroin and marijuana. Respondent-mother also was in violation of a no-contact order with the father of another one of her children and there was domestic violence in the residence. Respondent-mother continued to relapse and she left an inpatient rehabilitation treatment program. The court removed the minor child from respondent-mother's care two days after his birth, and he was placed in foster care. Respondent-mother was ordered to comply with a service plan and she participated in parenting visits. At that time of the removal, the minor child's father was unknown and respondent-father was serving a lengthy prison sentence.

Following several dispositional review hearings, on June 26, 2015, the court entered an order indicating that respondent-mother was not benefitting from services, that her participating was sporadic, and that it was unlikely that respondent-mother would benefit from services within a reasonable amount of time. The permanency planning goal was changed from reunification to adoption.

-1-

On July 31, 2015, the court authorized a petition to terminate respondent-mother's parental rights to the minor child. Shortly thereafter, respondent-father, in propria persona, moved for appointment of counsel, asserting that he was the father of the minor child and he requested that the minor child be placed with his mother, the minor child's paternal grandmother. In the meantime, following a hearing, on October 14, 2015, the trial court entered an order terminating respondent-mother's parental rights to the minor child. That order is not at issue in this his appeal and respondent-mother is not a party to this appeal.

On October 16, 2015, with respect to respondent-father, DHHS filed a petition to terminate respondent-father's rights to the minor child, citing respondent's extensive criminal history and noting that respondent-father was sentenced to a 72-360 month prison sentence in 2014. DHHS then filed another petition adding an allegation that respondent-father's rights to five other children were terminated in Eaton County. At the time of the petitions, respondent was imprisoned following a conviction of home invasion, second degree, and he was sentenced as a habitual offender, fourth offense, to 72 to 360 months in prison.

On October 22, 2015, the trial court held a pretrial hearing where respondent-father participated via telephone from prison. The court indicated that it received respondent-father's acknowledgement of parentage of the minor child and appointed counsel for respondent-father.

On March 18, 2016, the trial court held a jury trial to determine whether to assume jurisdiction per MCL 712A.2(b)(2). Respondent-father testified at the trial about his criminal history. Respondent-father was convicted twice as a juvenile of domestic violence in 1995. In 1998 he was convicted of assault and battery; in 1999 he was charged with three counts of receiving and concealing stolen property over $100, was convicted of one count, and was sentenced to 40-60 months imprisonment. Shortly after his release from prison in 2003, respondent-father pleaded no contest to breaking and entering and was again incarcerated until 2006. Upon his release in 2006, respondent-father was convicted of disturbing the peace and possession of marijuana in 2007. In 2010, respondent-father was convicted of resisting and obstructing a police officer. In 2012 respondent-father was convicted of a misdemeanor larceny. Then, on October 2012, respondent-father was convicted of second-degree home invasion and was sentenced to 365 days in jail and released on probation. Respondent-father violated the probation and was then sentenced to 72-360 months imprisonment. Respondent-father admitted that he had never met the minor child, but blamed petitioner for refusing to allow him to visit the minor child. Respondent-father admitted that his earliest release date was 2020 and he could be incarcerated until the minor child was age 38. The jury found that a preponderance of the evidence supported the court assuming jurisdiction under MCL 712A.2(b).

Petitioner filed a supplemental petition to terminate respondent-father's rights pursuant to MCL 712A.19b(3)(g) (h) (j) and (l). The petitioner alleged that respondent-father had 12 prior felony and misdemeanor convictions, including the 2012 second-degree home invasion for which he received a 6 to 30-year prison sentence on September 18, 2014. The petitioner also asserted that respondent-father's parental rights to five other children were terminated in Eaton County. His rights to three sons were terminated on March 16, 2004, following a petition alleging physical abuse and a lack of financial and emotional support. His rights to two other children were terminated on January 11, 2005, based on lack of contact and support for more than two years. The petition in the present case alleged that respondent-father received "foster care

services, substance abuse services, anger management classes and parenting classes" in the prior Eaton County cases and he participated in an eight week "Father Factor program." The petition alleged that respondent-father had never met the minor child and that respondent-father's earliest release date was 2020 and his latest release date was 2053 and that termination was in the minor child's best interests.

On June 21, 2016, the trial court entered an opinion and order on the record terminating respondent-father's parental rights. The court considered the record from the jurisdictional trial, the record from the Eaton County termination proceedings, and "the testimony and evidence presented during the dispositional hearing."[1] The court noted that respondent-father provided the court with the names of his mother, a niece, and a cousin for possible placement. However, the court noted that DHHS and the guardian ad litem (GAL) both concluded that none of the homes were suitable for the minor child. With respect to the paternal grandmother, she had recent serious health issues and could not care for the minor child. With respect to the niece, the court noted that DHHS found that the niece's home was not suitable. The niece had financial issues, her home was previously the subject of a CPS investigation involving domestic violence and homelessness and the niece's husband had a criminal record. In addition, the niece was already caring for a one-year old nephew of her own, she was attempting to complete job training, and she had no relationship with the minor child. Finally, with respect to respondent-father's cousin, respondent-father did not discuss the issue with the cousin, he did not know the cousin's address, and DHHS could not locate the cousin. In addition, DHHS determined that the minor child was in the same foster home where he had resided since his birth with an older sibling. He was well cared for, bonded and attached to the foster family. It was also determined that removing the minor child from the foster family would be traumatic. For all of these reasons, the trial court determined that placement with a relative was not appropriate and therefore respondent-father had failed to provide proper care and custody of the minor child.

The court proceeded to find grounds for termination under MCL 712A.19b(3)(h), where there was clear and convincing evidence to show that respondent-father was incarcerated for such a period that the minor child would be deprived of a normal home for more than two years and where respondent-father failed to provide proper care and custody of the minor child and there was no likelihood that he would do so within a reasonable amount of time. Respondent-father was sentenced to a lengthy prison term shortly before the minor child's birth and defendant's earliest release date was in 2020.

The court also found grounds for termination under MCL 712A.19b(3)(g), where respondent-father failed to provide proper care and custody and there was no reasonable expectation that he could do so in a reasonable amount of time. In addition, the court found

---

[1] The transcript to the dispositional hearing was not included in the lower court record; however, respondent-father does not challenge the court's factual findings based on the evidence from that hearing, but rather challenges the legal conclusions the court reached based on that evidence— i.e. whether the facts, as found by the court, amounted to grounds for termination and showed that termination was in MV's best interests.

grounds for termination under MCL 712.19b(3)(j), were there was a reasonable likelihood that the minor child would be harmed if returned to respondent-father's home. The court noted that respondent-father's repeated criminality posed a risk of harm to the minor child.

Finally, the court found grounds for termination under MCL 712a.19b(3)(i), where the evidence showed that respondent-father's rights to one or more of the minor child's siblings had been terminated "due to serious and chronic neglect or physical or sexual abuse and prior attempts to rehabilitate . . . have been unsuccessful." Specifically, the trial court considered the record from Eaton County where two of respondent-father's sons testified that he physically abused the children, their mother, and his girlfriends. In addition, the children saw respondent-father "kick the dogs and make the dogs fight each other for sport." The court noted:

> The two boys testified . . . to a horror story of repeated beatings, mental and emotional abuse at the hands of their father. They lived in terrible fear of their father while they lived with him. Both of the boys wanted their father's rights terminated. It is clear that the [Eaton County] Court terminated father's right due to serious chronic physical abuse of those children . . . . He's been offered and participated in programs through the Department of Corrections prior this latest incarceration. He also participated in a domestic violence program as well as substance abuse treatment . . . [minor child's] biological mother testified that the father was controlling so much so that she jumped out of a moving car to get away from him . . . . The father's continued criminality and criminal history also provides insight to the lack of benefit that the father has received from programming. It is noteworthy that the father's parental rights were also terminated in a prior case to [two other children] yet he continued to be severely physically abusive to his other children convincing this Court the prior attempts to rehabilitate the father have been unsuccessful. There has been nothing offered to convince this Court otherwise as to [minor child].

After finding statutory grounds for termination, the court found that termination was in the minor child's best interests. The court noted that the minor child was age two and had not met respondent-father and had no bond with him. The minor child would not be able to meet respondent-father until 2020 at the earliest when the minor child would be age six and there was the potential that respondent-father would not be released until the minor child was age 38. Respondent-father showed no parenting ability based on his conduct that led to the Eaton County termination proceeding. He perpetrated physical, mental, and verbal abuse upon his other children when he had custody of them and there was a long history of domestic violence and criminality. In addition, the court found that the minor child needed permanency and stability and the minor child could not wait until respondent-father was released from prison and reformed himself. The minor child was bonded with his foster family where he lived with a biological sister who was previously placed with the foster family. The court entered a written order terminating respondent-father's parental rights on June 21, 2016. This appeal ensued.

## II. JURISDICTION

Respondent-father argues that the court erred in assuming jurisdiction over the minor child.

We review "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

"In child protective proceedings, the trial court must first determine whether it may exercise jurisdiction over the child." *In re PAP*, 247 Mich App 148, 152; 640 NW2d 880 (2001). "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2[.]" *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). A court cannot terminate parental rights "unless jurisdiction exists under MCL 712A2.2(b)[.]" *In re Ramsey*, 229 Mich App 310, 314; 581 NW2d 291 (1998).

In this case, the jury found there was a preponderance of the evidence to support the court taking jurisdiction over the minor child pursuant to MCL 712A.2(b)(2), which provides that a court has jurisdiction under the following relevant circumstances:

> Whose home or environment, by reason of neglect, cruelty, drunkenness, *criminality*, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [Emphasis added.]

In this case, petitioner argued that there were statutory grounds for jurisdiction based on respondent-father's criminality. To assume jurisdiction on the basis of criminality, "[t]he petitioner . . . must demonstrate by a preponderance of the evidence only that the respondent engaged in criminal behavior," *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004), and that the criminal behavior rendered the home or environment unfit for the child to live in. MCL 712A.2(b)(2).

In this case, respondent-father had a substantial criminal history dating all the way back to 1995 when he was convicted as a juvenile. Respondent-father was convicted twice as a juvenile of domestic violence in 1995. In 1998 he was convicted of assault and battery; in 1999 he was charged with three counts of receiving and concealing stolen property over $100, was convicted of one count, and was sentenced to 40-60 months imprisonment. Shortly after his release from prison in 2003, he pleaded no contest to breaking and entering and was again incarcerated until 2006. Upon his release in 2006, respondent-father was convicted of disturbing the peace and possession of marijuana in 2007. In 2010, respondent-father was convicted of resisting and obstructing a police officer. In 2012 he was convicted of a misdemeanor larceny. Then, in October 2012, respondent-father was convicted of second-degree home invasion and was sentenced to 365 days in jail and released on probation. In 2014, respondent-father violated the probation and was sentenced to 72-360 months imprisonment. On this record, the jury did not clearly err in finding that a preponderance of the evidence supported the court assuming jurisdiction under MCL 712A.2(b)(2).

Respondent-father argues that his criminal status alone cannot be grounds to assume jurisdiction and that he had a relative that could have provided a home for the minor child. These arguments lack merit. Here, it is clear that respondent-father's criminal status was not the

sole basis for the court assuming jurisdiction. Rather, respondent-father's long history of criminality showed that an environment with him was unfit for the minor child; thus, the trial court had authority to take jurisdiction under MCL 712A.2(b)(2). Whether respondent-father had a relative who could care for the minor child concerned the termination proceeding, not the jurisdictional phase of the proceeding. See *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). Unlike the termination phase, a court need not consider placement with a relative during the jurisdictional phase of the proceeding. MCL 712A.2(b)(2). In sum, the court did not err in assuming jurisdiction over the minor child.

## III. STATUTORY GROUNDS

Next, respondent-father argues that the trial court erred in finding statutory grounds for termination.

We review a trial court's finding that a statutory ground for termination has been proved by clear and convincing evidence for clear error. MCR 3.977(K); *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 263; 817 NW2d 115 (2011).

In this case, the trial court terminated respondent-father's parental rights under several provisions including MCL 712A.19b(3)(h), which provides that the court may terminate parental rights where there is clear and convincing evidence that:

> The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Our Supreme Court has previously explained that MCL 712A.19b(3)(h) authorizes termination if each of the following three conditions is met:

> The parent is imprisoned for such a period that [1] the child will be deprived of a normal home for a period exceeding 2 years, *and* [2] the parent has not provided for the child's proper care and custody, *and* [3] there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [*In re Mason*, 486 Mich 142, 160-161; 782 NW2d 747 (2010).]

Although a parent is incarcerated and cannot personally care for a child, a parent can nevertheless "provide for a child's care and custody although the parent is in *prison*." *Id*. at 161.

In this case, the trial court did not clearly err in finding grounds for termination under MCL 712A.19b(3)(h). There was evidence that respondent-father would be imprisoned for more than two years from the time of the termination petition. Respondent-father was sentenced in 2014 three months before the minor child's birth to a minimum sentence of six years, meaning that his earliest release was 2020. In addition, respondent-father had not provided for the minor

child's proper care and custody. Respondent-father did not identify a relative who could provide a suitable home for the minor child. Respondent-father does not dispute that court's factual findings that his mother could not provide for care as she was ill. Similarly, the other two relatives who were identified were not suitable homes for the minor child. Finally, there was no expectation that respondent-father could provide proper care and custody within a reasonable amount of time. Respondent-father was sentenced to 6-20 years' imprisonment, he had a lengthy history of criminality and domestic violence, and he did not benefit from services during the prior Eaton County termination proceeding. In short, the trial court did not clearly err in finding grounds for termination under MCL 712A.19b(3)(h).

Respondent-father argues that he proposed that the minor child be placed with relatives and he argues that DHHS' refusal to place the minor child with one of the relatives amounted to error. This argument lacks merit. A trial court must consider whether placement with a relative is possible before terminating parental rights. See *In re Olive/Metts*, 297 Mich App at 43 ("A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal.")

Here, the trial court did consider placement with the three relatives named by respondent-father and the court made findings as to each of those relatives to show why placement was not possible. Respondent-father does not challenge the specific findings about the relatives, but rather argues that the facts cited by the court did not support the court's determination that placement with a relative was not in the minor child's best interests. However, the court's findings were not clearly erroneous. The court noted that the paternal grandmother could not care for the minor child because she suffered an illness. The niece was not a viable placement option; the niece was balancing a job training program, work, and caring for a nephew of her own. In addition, she was previously subject to a CPS investigation and her husband had a criminal record. Furthermore, the minor child was attached to his foster family and placement with the foster family allowed him to be raised with his biological sister who was also placed in the foster family. The court properly considered placement with relatives and it did not clearly err in determining that placement was not viable and not in the minor child's best interests. Respondent-father's arguments to the contrary lack merit.

In addition to properly finding grounds for termination under MCL 712A.19b(3)(h), there was also clear and convincing evidence to support termination under (3)(i), which provides that termination is proper where "Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful." The trial court considered the record from the proceedings in Eaton County where respondent-father's parental rights to three children were terminated. In that case, the trial court terminated respondent-father's parental rights under several statutory provisions including MCL 712A.19b(j) for evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The Eaton County court made findings in that case that respondent-father physically and mentally abused the minor child's siblings. The court noted that testimony of two of the children showed that the younger child "could not handle getting hit again," and that the older child took a "beating at the hands of his father" so that the younger child did not have to suffer the beating. The court found that the

children "lived in terrible fear of their father," and told a "horror story of repeated beatings, mental and emotional abuse at the hands of their father."

Respondent-father does not dispute that he previously received services in connection with the prior termination proceeding. Based on the evidence from the Eaton County case, the trial court in this case did not err in finding that parental rights to one or more of the minor child's siblings were terminated "due to serious and chronic neglect or physical . . . abuse and prior attempts to rehabilitate the parents have been unsuccessful." MCL 712A.19b(i). Given that there was one ground for termination, we need not address the other grounds relied on by the trial court. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## IV. BEST INTERESTS

Respondent-father argues that the trial court erred in finding that termination was in the minor child's best interests.

Under MCL 712A.19b(5), "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Olive/Metts*, 297 Mich App at 40. We review for clear error a trial court's determination whether termination of parental rights is in a child's best interests. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

Here, the evidence showed that the minor child had no bond with respondent-father and had not met respondent-father before. Respondent-father was serving a lengthy prison sentence and respondent-father showed no ability to provide proper care and custody of the minor child. He was unable to identify a relative who could care for the minor child and the earliest respondent-father would be released was in 2020. Even after his release, respondent-father would need to show that he benefitted from services, something he was unable to do in prior proceedings. In prior proceedings, respondent-father failed to benefit from services and showed no ability to parent or care for his children. Respondent-father had a lengthy history of criminality. He showed repeatedly that he was unable to conform his behavior to the law. He previously abused his children, the mother of his children, his pets, and his girlfriends. Respondent-father showed no ability to overcome his violent past and there was no evidence to show that he would provide a safe and stable environment for the minor child at any time in the future. In contrast, as previously stated, the minor child was bonded with his foster family where he had lived since birth. The minor child was placed with a biological sister and his foster family provided the safety, stability and permanency that he needed. In sum, the trial court did not clearly err in finding that termination was in the minor child's best interests.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle