*In re* MU

Docket No. 254908. Submitted July 14, 2004, at Detroit. Decided November 2, 2004, at 9:00 a.m. Leave to appeal denied, 472 Mich ___.

The Family Independence Agency (FIA) petitioned the Benzie Circuit Court, Family Division, seeking to have MU and TU, minor children of Mark and Florence Unger, declared temporary wards of the state. By stipulation, venue was changed to Oakland County, the residence of the minor children. Later, the FIA filed an amended petition seeking termination of the respondent father's parental rights under MCL 712A.19b(3)(g) and (h), which petition the Family Division of the Oakland Circuit Court authorized on the basis of jurisdiction arising from MCL 712A.2(b)(1) and (2). The respondent father moved for the trial court to review its order authorizing the amended petition. The court, Linda S. Hallmark, J., granted the respondent's motion to bar evidence regarding the circumstances of the children's mother's death, alleged to be by murder by the respondent, on the basis that the outcome of civil proceedings with such evidence would deny the respondent due process of law and could prejudice the respondent, his children, or the state in a future criminal proceeding, but rejected the argument that MCL 712A.2(b)(2), which gives jurisdiction to the court on the basis of criminality on the part of a parent resulting in the child's home or environment being unfit, requires a criminal conviction or charge to establish that jurisdiction. On appeal by leave granted, the respondent argued that a finding of criminality giving jurisdiction to the lower court requires a conviction and, because there was no conviction, the court lacked subject-matter jurisdiction to find criminality. On cross-appeal, the petitioner argued that the trial court erred in determining that the finding of criminality relating to the mother's death, in the absence of a criminal charge or conviction, violated the respondent's due process rights. The petitioner also argued that the lower court erred by excluding evidence of the circumstances surrounding the mother's death.

The Court of Appeals *held*:

1. The respondent incorrectly asserts that a trial court finding of criminality giving jurisdiction to the lower court under MCL 712A.2(b)(2) requires a conviction, and, because there was no

conviction, the court lacked subject-matter jurisdiction to find criminality. Under the statute, criminality relates to the state of being criminal or the nature of a crime or involving a crime, not to a specific conviction for a specific crime. The court may terminate parental rights if it finds by a preponderance of the evidence that the respondent engaged in criminal behavior that resulted in the child's home or environment being unfit.

2. The trial court erred in determining that the finding of criminality relating to the mother's death, in the absence of a criminal charge or conviction, violated the respondent's due process rights. Due process is flexible. What is required for due process depends on the nature of the proceeding and the interest affected by it. In this case, the proceeding was about child protection, not punishment of a parent by trial in the family division with a lower burden of proof than in a criminal case. The parent has a liberty interest in managing his children. The government interest in this protective proceeding is the child's interest in being free from an abusive environment. In this case, due process is not offended by determining whether a preponderance of the evidence shows that the father engaged in criminal behavior. The burden of proof in this proceeding is insufficient to establish the respondent's guilt for the purpose of a criminal conviction. In any subsequent criminal trial, the father's rights to be presumed innocent, to a fair trial, and to a prosecutor's burden of proof beyond a reasonable doubt will survive. Difficulty in achieving a fair trial in a potential later criminal case is not a due process problem in this case.

3. The lower court erred by excluding evidence of the circumstances surrounding the mother's death. Having rejected the respondent's argument of a due process violation, if the court excluded the evidence on the basis of a due process violation, it erred. If the court's decision rested on the respondent's claim that admitting that evidence is more unfairly prejudicial than probative, MRE 403, it abused its discretion because whether the respondent killed the mother of the children is highly relevant to the issue whether criminality renders the children's home or environment unfit.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. COURTS — JURISDICTION — CHILD PROTECTIVE PROCEEDINGS — PARENTAL CRIMINALITY.

Criminality by a parent, which gives rise to jurisdiction of the court in a child protective proceeding, is not limited to a specific

conviction or charge, but is a determination by the preponderance of the evidence whether the parent's involvement in some criminal activity rendered the child's home or environment unfit (MCL 712A.2).

2. CONSTITUTIONAL LAW — DUE PROCESS — CHILD PROTECTIVE PROCEEDINGS — PARENTAL CRIMINALITY.

    A child protective proceeding is about child protection, not punishment of a parent for a crime; the parent has a liberty interest in managing his children, but the government interest reflects the child's interest in being free from an abusive environment; due process is not offended by determining whether a preponderance of the evidence demonstrates that the parent engaged in some criminal behavior rendering the child's home or environment unfit (MCL 712A.2).

*David G. Gorcyca,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Anica Letica,* Assistant Prosecuting Attorney, for the petitioner.

*Robert Harrison & Associates, PLC* (by *Robert S. Harrison* and *Matthew D. Klakulak*), *Butzel Long* (by *David W. Potts, Karen Pilat,* and *Michael F. Smith*), and *Allen & Associates, PLC* (by *Charlotte L. Allen*) for the respondent.

*William Lansat* for the minors.

Amicus Curiae:

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Julie A. McMurtry,* Assistant Attorney General, for the Attorney General.

Before: ZAHRA, P.J., and TALBOT and WILDER, JJ.

PER CURIAM. The petitioner appeals by leave granted the trial court's partial grant of the respondent's motion in limine and motion for reconsideration of, or relief from, the order approving the supplemental petition in this child protective proceeding. The respondent

cross-appeals the trial court's partial denial of the same motions. In the petitioner's appeal, we reverse the trial court's order to the extent that it prevents the petitioner from presenting evidence concerning the circumstances of Florence Unger's death at proceedings to determine whether the trial court has jurisdiction over the respondent's minor sons under MCL 712A.2. In the respondent's cross-appeal, we affirm the trial court's denial of the respondent's motion on the basis that proving criminality for purposes of MCL 712A.2(b)(2) does not require a prior criminal adjudication of guilt.

I

The respondent is the father of two minor sons, born in 1993 and 1996. This child protective matter arises from the respondent's suspected involvement in the murder of his wife, the children's mother, Florence Unger. In October 2003, the respondent, Mrs. Unger, and their sons went on a vacation to Benzie County, where they rented a cabin on Lower Herring Lake. About 8:00 a.m. on October 25, 2003, Mrs. Unger was found dead, lying at the edge of the lake. According to the investigating officer, Benzie County Sheriff's Deputy Detective Sergeant Tom Kelly, Mrs. Unger appeared to have fallen from a boathouse deck onto a concrete pad twelve feet below. Blood on the concrete pad indicated that her body had been moved between 2-1/2 and 3 feet from the concrete pad into the water. The medical examiner concluded that the death was a homicide.

Although the respondent was not immediately charged with any crimes arising from Mrs. Unger's death, he was apparently the focus of the investigation and the lone suspect in the killing. Soon after Mrs. Unger's death, the respondent's sons were removed

from his care and placed with maternal relatives. The office of the Benzie Prosecuting Attorney sought temporary wardship of the minor children, which the Benzie Circuit Court, Family Division, approved on October 27, 2003. The parties stipulated a change of venue to Oakland County, the minor children's county of residence.

Thereafter, in November 2003, the petitioner filed a "supplemental" petition[1] to terminate the respondent's parental rights, which the trial court authorized. The petition sought jurisdiction over the children on the basis of MCL 712A.2(b)(1) and (2), and explicitly stated that the children's "home or environment, by reason of neglect and/or cruelty and/or criminality and/or drunkenness and/or depravity of Father is an unfit place for the children to live. They are subject to a substantial risk of harm to their mental well being." The petition sought to terminate the respondent's parental rights under MCL 712A.19b(3)(g) and (j). The "criminality" alleged in the petition is the alleged murder of Mrs. Unger, which alleged criminality is based on the testimony by Detective Sergeant Kelly during a preliminary hearing on the original petition.

In February 2004, after the trial court had authorized the supplemental petition and before the trial to determine the trial court's jurisdiction over the children, the respondent moved for reconsideration or rehearing of the trial court's order authorizing the supplemental petition. The respondent first sought dismissal of the petition on the basis that because the petitioner's statutory basis for asserting jurisdiction depended on its theory that the respondent killed Mrs.

---

[1] Although the petition indicates that it is a supplemental petition, it appears that the petition is more accurately described as an amended petition.

Unger, there could be no jurisdiction because the trial court lacked authority to determine "criminality" in the absence of a criminal conviction. Alternatively, the respondent contended that because the trial court lacked subject-matter jurisdiction to find him guilty of a criminal offense, any evidence of alleged criminality should be excluded pursuant to MRE 403. The respondent also asserted that the introduction by the petitioner of evidence of alleged "criminality" represented an attempt to "try" the criminal case in this civil proceeding, thus violating his right to due process and a fair trial.

In reply to the respondent's motion, the petitioner contended that evidence of the homicide was highly relevant to proving both the criminality alleged as the basis for jurisdiction and that respondent was a danger to the minor children. The petitioner also asserted that use of evidence of criminality did not constitute an attempt to try the criminal case in this civil proceeding and, moreover, that the petitioner was not entitled to the protections guaranteed a criminal defendant. The guardian ad litem appointed to represent the children agreed with the petitioner's assertions, arguing that the focus of the proceedings was not whether the respondent could be found guilty of homicide, but whether there was a basis for the trial court to exercise jurisdiction over the minor children.

In its written opinion, the trial court, although first acknowledging that criminality was not the only basis for jurisdiction alleged in the supplemental petition, rejected the respondent's contention that a criminal conviction or charge was a necessary prerequisite to a finding of criminality for the purpose of establishing jurisdiction over the minor children. Nevertheless, the trial court granted the respondent's motion to exclude

evidence regarding Mrs. Unger's death, concluding that the use of such evidence against the respondent in the absence of criminal charges or a conviction would deny the respondent the due process of law. The trial court stated:

> [T]he prosecutor has repeatedly stated, in various phrases and interpretations, that he will prove that respondent murdered Florence Unger in the adjudicative phase of these proceedings. The standard of review [sic] in the adjudicative phase is a preponderance of the evidence. MCR 3.972(C). This court's evaluation of respondent's due process rights in this civil child protective proceeding will affect respondent's rights to care for and manage his children. A risk of erroneous deprivation of the right to care for and manage his children exists by attempting to try a criminal case in family court using a lower burden of proof standard.

The trial court also concluded that although collateral estoppel would not apply to future criminal proceedings, the outcome of the civil proceedings could prejudice the respondent, his children, Mrs. Unger's family, or the state in a future criminal proceeding. For these reasons, the trial court barred petitioner from offering any evidence regarding the circumstances of Florence Unger's death in this proceeding.

This appeal and cross-appeal ensued, and on May 19, 2004, we granted the petitioner's application for leave to appeal and stayed proceedings in the trial court.

II

We review de novo questions of statutory interpretation. *People v Hock Shop, Inc,* 261 Mich App 521, 524; 681 NW2d 669 (2004). We review for abuse of discretion a trial court's decision to admit or exclude evidence; however, when resolving an evidentiary issue requires

resolving a question of law such as a constitutional question, our review is de novo.[2] *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999); *Mahaffey v Attorney General*, 222 Mich App 325, 334; 564 NW2d 104 (1997).

### III

### A

In light of its potentially dispositive nature, we first address the respondent's argument on cross-appeal.[3] The respondent contends that the petitioner cannot prove that "criminality" rendered the minor children's home or environment unfit on the date the supplemental petition was filed, MCL 712A.2(b)(2), because the respondent had not been convicted of a crime at that time and the trial court lacks subject-matter jurisdiction to make a finding of criminality. We disagree.

> [A] family court has subject-matter jurisdiction when the allegations in the petition provide probable cause to believe that it has statutory authority to act because the child's parent or guardian neglected the child, failed to provide a fit home, or committed any of the other conduct described in the statute. Whether the allegations are later proved true is irrelevant to whether the family court has

---

[2] We reject the respondent's contention that the petitioner failed to preserve its arguments on appeal. The petitioner opposed the respondent's arguments in the trial court, albeit without the depth of its appellate analysis. The petitioner is not prevented from asserting and thoroughly briefing these issues on appeal. *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).

[3] We decline to address the Attorney General's argument, raised in its brief amicus curiae, that the trial court abused its discretion by reviewing the respondent's motions despite the fact that they were untimely filed. This issue was not raised by the petitioner on appeal and is, therefore, not properly before us. MCR 7.212(H)(2); *Reynolds v Bureau of State Lottery*, 240 Mich App 84, 103; 610 NW2d 597 (2000).

subject-matter jurisdiction. [*In re AMB*, 248 Mich App 144, 168; 640 NW2d 262 (2001).]

The statute providing the family court's authority, MCL 712A.2, provides, in part:

The court has the following authority and jurisdiction:

\* \* \*

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) . . . who is subject to a substantial risk of harm to his or her mental well-being . . . [or]

\* \* \*

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

For the family court to acquire jurisdiction[4] over the minor children, "the factfinder must determine by a preponderance of the evidence that the child comes within [a] requirement of MCL 712A.2." *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998).

We first briefly address the respondent's rather unremarkable argument that the petitioner must establish that criminality rendered the home or environment

---

[4] As this Court stated in *In re AMB, supra* at 176-177:

In this context, jurisdiction has a very specific meaning. In order for a child to come within a family court's jurisdiction, the family court must hold an adjudication, which is a trial on the merits of the allegations in the petition. Following the adjudicative hearing, the family court must find that a preponderance of legally admissible evidence demonstrates that there is factual support for one of the grounds permitting judicial involvement under MCL 712A.2(b). Once the family court determines that the child comes within its jurisdiction, it can enter dispositional orders that govern all matters of care for the child.

unfit at the time the petition was filed. The statute speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed. The respondent claims that such a showing cannot be made in this case because he was not convicted of a crime at that time the petition was filed. As discussed below, however, we conclude that "criminality" does not mean "conviction."

The Legislature did not define "criminality" for the purpose of MCL 712A.2. Accordingly, we consult dictionary definitions to assist us in giving the term its ordinary and generally accepted meaning. *People v Cathey*, 261 Mich App 506, 514 n 4; 681 NW2d 661 (2004), citing *Koontz v Ameritech Services, Inc*, 466 Mich 304, 313; 645 NW2d 34 (2002). The primary definition of "criminality" is "the state of being criminal." *Random House Webster's College Dictionary* (2nd ed, 2000). The primary definition of "criminal" is "of the nature of or involving crime." *Id.*

Contrary to the respondent's assertions, in order for the trial court to assume jurisdiction over the minor children on the basis of criminality, the petitioner does not need to prove that the respondent was convicted of a crime. "[T]he state of being criminal" differs from the state of being prosecuted and convicted of a criminal offense because an activity can be criminal in nature regardless of whether the violated criminal law is enforced. The petitioner, therefore, must demonstrate by a preponderance of the evidence only that the respondent engaged in criminal behavior. As the petitioner aptly notes, if the Legislature intended to require proof of a conviction, it would have said so as it did in MCL 712A.19b(3)(n), which permits the trial court to terminate parental rights if it finds by clear and convincing evidence that the parent is "convicted" of

violating specific sections of the penal code and that termination is in the child's best interests. Because the Legislature did not state that a petition founded on MCL 712A.2(b)(2) must be predicated on a conviction, we conclude that it did not intend such a requirement. See *Hock Shop, Inc, supra* at 528-530, citing *People v Wilcox*, 83 Mich App 654; 269 NW2d 256 (1978).

We further disagree with the respondent's contention that the trial court lacks subject-matter jurisdiction to make a finding of criminality. The fact that the trial court cannot determine the respondent's guilt and issue a judgment of conviction for the criminal charge against him does not preclude it from determining that a preponderance of the evidence demonstrates that the respondent engaged in criminal behavior and that the behavior has rendered the home or environment unfit. Because a factual finding of "criminality" differs from the imposition of a judgment of conviction, the trial court does not exceed the bounds of its jurisdiction by determining that criminality exists.

B

The petitioner first asserts on appeal that the trial court erred by deciding that finding criminality on the basis of the respondent's responsibility for Mrs. Unger's death, in the absence of a criminal charge or conviction, violates the respondent's due process rights. We agree.

" '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993), quoting *Mathews v Eldridge*, 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976) (citation omitted). " 'Analysis of what process is due in a particular proceeding depends on the nature of the proceeding and the interest affected by it.' " *Sherrod v Detroit*, 244

Mich App 516, 524; 625 NW2d 437 (2001), quoting *Klco v Dynamic Training Corp,* 192 Mich App 39, 42; 480 NW2d 596 (1991). In child protective proceedings, the focus is the protection of the child, not the punishment of the parent, *Brock, supra* at 107-108, or the vindication of "the public interest in the enforcement of the criminal law . . . ," *People v Gates,* 434 Mich 146, 162; 452 NW2d 627 (1990).

We consider the following factors to determine what process is due:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*Brock, supra* at 111, quoting *Mathews, supra* at 335.]

In the adjudicative phase of a child protective proceeding, the parent's liberty interest at stake is the interest in managing his children, and the procedures used in such proceedings protect the parent from the risk of being erroneously deprived of this interest. *Brock, supra* at 111. The governmental interest at stake is the child's welfare, which coincides with the child's interest of being free from an abusive environment. *Id.* 113 n 19. " '[T]he child's interest in a continuation of the family unit exists only to the extent that such a continuation would not be harmful to him.' " *Id.* (citation omitted).

Here, despite concluding that it has the authority to make a factual finding of criminality and that such a finding does not depend on proof of a conviction, the trial court nevertheless concluded that determining criminality in this case in the absence of a criminal

charge or conviction would violate respondent's due process rights because "attempting to try a criminal case in family court using a lower burden of proof" creates a risk of erroneous deprivation. We find that the trial court erred in this conclusion.

Rather than appropriately balancing the factors stated in *Mathews, supra* at 335, the trial court focused on the harm the children would suffer if deprived of their father and the potential bias the respondent might incur in the subsequent criminal proceedings. As stated above, however, the children's interest in maintaining a relationship with their father exists only to the extent that it would not be harmful to them. *Brock, supra* at 113 n 19. Their welfare is of the utmost importance in these proceedings, *id.* at 115, and due process is not offended by determining whether the trial court has jurisdiction to decide whether the relationship with their father should continue. Procedural due process seeks to protect the children from an *erroneous* termination of their relationship with their father, not a statutorily proper termination. See *id.* at 113.

By weighing the potential for bias against the respondent in future criminal proceedings, the trial court departed from its responsibility to determine the process due the respondent in this case and improperly considered and applied to these proceedings the due process to which the respondent would be entitled in the criminal proceedings. We emphasize that the respondent's liberty interest in these proceedings is the care and maintenance of his children. *Id.* at 111. His right to due process in this case is not offended by determining, even in the absence of a criminal conviction, whether a preponderance of the evidence shows that he engaged in criminal behavior. In this regard, a finding that jurisdiction rests with the trial court in this

case does not amount to a criminal conviction, and the respondent cannot be punished as a result of the adjudicative proceeding. Moreover, in light of the lower burden of proof in this case, a finding of criminality is insufficient to establish the respondent's guilt in the criminal proceeding. See *Gates, supra* at 159. In any subsequent criminal proceeding, the respondent will have all the constitutional rights afforded criminal defendants, including the rights to a fair trial and to be presumed innocent, *People v Banks*, 249 Mich App 247, 256, 258; 642 NW2d 351 (2002) (citations omitted), and the right to require the prosecution to prove his guilt beyond a reasonable doubt, *People v Gaudin*, 515 US 506, 509-510; 115 S Ct 2310; 132 L Ed 2d 444 (1995).[5]

Simply put, a trial to determine whether the respondent engaged in criminal behavior that supports jurisdiction over the minor children does not amount to a criminal trial with a lower burden of proof. The respondent's contention that a fair trial will be difficult to achieve in the criminal proceeding because the public

---

[5] Although not directly raised on appeal, we also note that a respondent cannot be compelled to incriminate himself in the child protective proceedings.

> The privilege against self-incrimination not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also permits him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. [*Phillips v Deihm*, 213 Mich App 389, 399-400; 541 NW2d 566 (1995), citing *Allen v Illinois*, 489 US 364, 368; 106 S Ct 2988; 92 L Ed 2d 296 (1986); *In re Stricklin*, 148 Mich App 659, 663; 384 NW2d 833 (1986).]

This fact, however, will not prevent an adverse inference against the respondent in this proceeding if he chooses not to testify. *Phillips, supra* at 400, citing *Baxter v Palmigiano*, 425 US 308, 318; 96 S Ct 1551; 47 L Ed 2d 810 (1976).

will not be able to differentiate between a finding of jurisdiction over the minor children and a criminal conviction has no relevance in determining what due process requires in this proceeding. The trial court erred by deciding that due process is violated by proceeding to determine whether a preponderance of the evidence shows that respondent killed Mrs. Unger.

C

The petitioner also argues that the trial court erred by granting the respondent's motion in limine to exclude evidence of the circumstances surrounding Mrs. Unger's death. We agree. The trial court offered no specific justification for granting the motion in limine, suggesting that its decision to exclude such evidence rested on its determination that presenting this evidence would violate the respondent's due process rights. Because we have rejected the trial court's due process analysis as erroneous, we likewise find that if the trial court ruled that evidence concerning the circumstances of Mrs. Unger's death should be excluded as a violation of the respondent's due process rights, it erred by relying on faulty due process analysis. However, to the extent that the trial court's decision rested not on due process grounds, but, instead, on the respondent's claim that admitting evidence of the circumstances surrounding Mrs. Unger's death violates MRE 403, we conclude that the trial court abused its discretion in excluding the evidence on this latter basis. As the trial court intimated, it may later address specific objections to specific evidence as it is offered for admission in this proceeding. In general, however, whether the respondent killed Mrs. Unger is highly relevant to the issue whether "criminality" renders the children's home or environment unfit. Although evi-

dence that the respondent killed Mrs. Unger is prejudicial in the sense that any evidence offered against a party is prejudicial, *People v Oswald (After Remand)*, 188 Mich App 1, 8; 469 NW2d 306 (1991), this evidence is not unfairly prejudicial, *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 404; 571 NW2d 530 (1997) (stating that "[u]nfair prejudice exists when marginally relevant evidence might be given undue or preemptive weight by the jury or when it would be inequitable to allow use of such evidence"), citing *Haberkorn v Chrysler Corp*, 210 Mich App 354, 361-362; 533 NW2d 373 (1995).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.