*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re K. NAYLOR, Minor.

UNPUBLISHED
September 15, 2022

No. 360741
Kent Circuit Court
Family Division
LC No. 22-050417-NA

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order placing the minor child, KN, in out-of-home placement. On appeal, mother argues that removal of KN from her care was improper because the trial court considered circumstances from before KN was born and because it did not address all required conditions of removal on the record. We disagree and affirm.

## I. BACKGROUND

At the time KN was born, respondent had four children placed in foster care and was engaged in—but had not yet completed—a treatment plan. The day after KN was born, the trial court entered an order to take KN into protective care due to ongoing concerns with respondent's ability to care for KN stemming from an inability to understand the needs of the child, as well as ongoing concerns about individuals that respondent may bring around the child.

At the ensuing preliminary hearing, respondent waived the probable cause finding but contested KN's out-of-home placement. Nicholas Baldes with the Department of Health and Human Services (DHHS) testified about the allegations in the petition, affirming that respondent had four children in foster care when KN was born, that respondent was engaging in but had yet to complete a treatment plan, and that the DHHS had ongoing concerns about (1) respondent's inability to understand why her other children were in foster care and (2) who she allowed around the children. Baldes testified that KN would be at risk of harm if placed with respondent due to respondent's continued need for significant therapy services and the fact that she has not yet demonstrated the ability to properly parent during visitations before KN was born. He added that he believed this was a capacity issue in that respondent had yet to understand and address the concerns that brought her other children into care, which was a major concern given KN's extremely young age.

-1-

Foster-care supervisor Jody Smith elaborated on much of what Baldes said. Smith testified that respondent had made some progress on her treatment plan but "there's still a long way for her to go in regards to that." She also testified that, while respondent had appropriate housing, "her budget [was] in the negative," she did "not have any known income," and there were ongoing concerns with transportation and respondent's "limited support system." With respect to the older children, Smith testified that they had "behavioral and mental health concerns," and that respondent had "been unable to keep them safe" such that there were concerns for the children's safety while in respondent's care due to "the people that [respondent has] allowed her children to be around." On this point, Smith explained that respondent had allowed her husband,[1] who respondent knew was a registered sex offender before she married him and allowed him into the home with her children, "and two of his associates . . . access to her four children," and there were concerns that at least one child was sexually abused "by these gentlemen." Smith also testified that respondent continued her relationship with her husband even after the children were removed, and they were still married by the time of the preliminary hearing, though respondent was moving forward with divorce proceedings. Smith added that she believed that respondent simply needed additional time to "make more progress before considering the infant to be placed in her care."

At the end of the hearing, the referee found that it would be contrary to KN's well-being to place him in respondent's home, and proposed an order reflecting its findings. The referee's findings will be discussed in more detail below. The trial court adopted the findings of the referee and entered the proposed order. Respondent now appeals.

## II. REMOVAL OF THE CHILD

Respondent makes two arguments for why she believes removal of KN was improper. First, she argues that removal of KN from her care was improper because the referee relied on circumstances surrounding respondent's four other children that were not applicable to KN. Second, she argues that the trial court failed to address all five grounds listed in MCL 712A.13a(9) for removing KN from respondent's care.

### A. STANDARD OF REVIEW

A trial court's factual findings are reviewed for clear error. *In re Gonzales/Martinez Minors*, 310 Mich App 426, 430; 871 NW2d 868 (2015). A trial court's finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Such a mistake must be more than "maybe or probably wrong" to be clearly erroneous. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999). Questions of law, including the application of court rules, are reviewed de novo. *In re Cole*, 491 Mich 324, 330; 817 NW2d 497 (2012).

### B. INTERPRETATION AND APPLICATION OF MCL 712A.13A(9)

In support of respondent's argument that the referee was precluded from considering the circumstances that led to the removal of her other four children when considering whether removal

---

[1] Respondent's husband was the legal father of KN, but not the biological father.

of KN was appropriate, respondent relies on *In re MU*, 264 Mich App 270; 690 NW2d 495 (2005). The portion of that case on which respondent relies dealt with MCL 712A.2, the statute providing courts with authority to exercise jurisdiction in proceedings involving minors, such as child-protective proceedings. See *In re MU*, 264 Mich App at 279. Respondent does not rely on *In re MU* for its discussion of that statute, but instead argues that we should apply its reasoning that, when "[t]he statute speaks in the present tense," "trial court[s] must examine the child's situation at the time the petition is filed," *id.*, to the statute at issue in this case—MCL 712A.13a(9).

MCL 712A.13a(9) provides:

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

We agree with respondent's general assertion that, to the extent that MCL 712A.13a(9) speaks in the present tense, "trial court[s] must examine the child's situation at the time the petition is filed." *In re MU*, 264 Mich App at 279. We disagree with her contention, however, that the trial court failed to do that in this case.

Respondent argues that concerns about her past treatment of the other four children and the resulting "physical and mental health issues" "were not material or relevant" because she was "only seeking placement of Baby KN." This argument ignores the doctrine of anticipatory neglect, which "provides that the parents' treatment of other children is indicative of how they would treat the child in question." *In re Foster*, 285 Mich App 630, 631; 776 NW2d 415 (2009).

Respondent similarly argues that "[c]oncerns expressed in reference to other persons living in the home who might not be appropriate" were improperly considered by the court because those persons were "not present" in her home at that time when the petition was filed. This ignores that the concerns raised at the preliminary hearing were not about individuals "living in the home who might not be appropriate," but rather respondent's questionable decision-making that permitted that situation to arise in the first place—a decision that led to concerns of sexual abuse.

Accordingly, while we agree with the general premise of respondent's argument about the proper interpretation of MCL 712A.13(9), we disagree with her contention that the trial court failed to properly apply MCL 712A.13(9) in this case.

## C. FACTORS UNDER MCL 712A.13A(9)

As the text of MCL 712A.13a(9) quoted earlier in this opinion makes clear, a trial court may order placement of a child in foster care only if it finds all five conditions listed in the statute have been met. This Court recently reiterated this point, explaining that the statute "explicitly require[s] that the trial court find *all* the factors prior to removing a child from a parent's care." *In re Williams*, 333 Mich App 172, 184; 958 NW2d 629 (2020). This includes a record "sufficient for this Court to conduct a meaningful review." *Id*. at 183.

Respondent does not contest that the trial court made adequate findings with respect to the conditions listed in MCL 712A.13a(9)(a), (c), or (e)—she argues only that the trial court failed to make adequate findings with respect to MCL 712A.13a(9)(b) and (d). MCL 712A.13a(9)(b) requires the court to find that "[n]o provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk" of harm, and Subsection (d) requires a finding that, "[c]onsistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child."

In the order entered following the preliminary hearing, the trial court explicitly found that "[c]ustody of the child with respondent present[ed] a substantial risk of harm to the [child's] life, physical health, or mental well-being" and "[n]o provision of service or other arrangement except removal of the [child was] reasonably available to adequately safeguard the [child] from the risk of harm to the [child's] life, physical health, or mental well-being." Likewise, the order explicitly found that, "[c]onsistent with the circumstances, reasonable efforts to prevent or eliminate removal of the [child] from the home were made as determined in a prior order," which incorporated by reference the order to take KN into protective custody. That order listed the efforts that the DHHS had engaged in to prevent removal, including parenting classes, therapy, supportive visitation, case management, and drug screens. It is well established that courts speak through their orders, not their oral pronouncements. *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977).

On appeal, respondent asserts that "[t]here was no finding under [Subsection] (b)," but does not explain why the court's finding in its order following the hearing, which explicitly addressed Subsection (b), was insufficient. Respondent seems to believe that the trial court needed to explicitly make any findings in its oral pronouncement, but, as stated, courts speak through their orders. *Id*. As such, respondent has failed to address the basis for the court's ruling—its finding in its order following the hearing. Given that respondent does not explain why the court's finding in its order was insufficient and instead inaccurately asserts that there was no such finding, this Court need not even consider the argument. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) ("When an appellant fails to dispute the basis of the trial court's ruling, this Court need not even consider granting [the appellant] the relief they seek.") (Quotation marks, citation, and alterations omitted.)

Even considering the argument, we would conclude that the trial court made a sufficient record to facilitate appellate review, and that its finding under Subsection (b) was not clearly

erroneous. The court noted all of the efforts that had been made to assist respondent—including parenting classes, therapy, and supportive visitation—but concluded that respondent was still not at a point where she could safely parent KN. Due to this, the court reasoned, KN would be at substantial risk of harm if placed in respondent's care, particularly given KN's extremely young age. On the basis of these findings, we are not definitely and firmly convinced that the court erred when it found that removal was the only way to safeguard KN from risk of harm.

Turning to Subsection (d), respondent does not contest the reasonable efforts themselves—i.e., the parenting classes, therapy, supportive visitation, case management, and drug screens—but rather contends that the reasonable efforts identified were "based purely upon . . . the case involving Appellant's other four (4) children," and there were no efforts to help respondent prepare for KN. However, most if not all of respondent's services with respect to the other four children were intended to assist respondent in properly parenting the children and providing them with a safe home environment, which would necessarily also help respondent prepare for parenting KN. The problem, as identified by the trial court, was that respondent had not progressed enough in her treatment plan to safely parent the child, and so there was a substantial risk of harm to KN if placed in respondent's care. Accordingly, we reject respondent's argument that the reasonable efforts found by the trial court were not intended to help respondent prepare for KN.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford