*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G A DAVIS, Minor.

UNPUBLISHED
September 21, 2023

No. 364151
Oakland Circuit Court
Juvenile Division
LC No. 19-872273-NA

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's adjudicatory order taking jurisdiction over her minor child, GAD.[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of various events involving respondent and GAD that required police intervention. According to respondent, GAD's troublesome behavior, which was previously improving, began to escalate after two family members passed away. There were three incidents, two in one day, when Hazel Park police officers were called to respondent's home for "family trouble." The responding officers reported respondent was visibly intoxicated when they arrived, and GAD was upset. The third incident resulted in domestic violence charges being filed against respondent. Although the charges were ultimately dropped, GAD remained with a cousin while the charges were pending, and an order was entered forbidding respondent from contacting GAD.

After the charges were dropped, GAD was returned to respondent's custody. However, within just over one week of returning, GAD stole respondent's vehicle twice, with the second theft resulting in a high-speed chase by police. After an interview with GAD, during which GAD accused respondent of alcohol and substance abuse, and being physically and verbally abusive to him, petitioner, the Department of Health and Human Services (the "Department"), filed a petition to remove GAD from respondent's care and custody. During the pendency of the case, it was also

---

[1] GAD's father was also a named respondent in the proceedings below but is not a party to this appeal.

revealed GAD had multiple mental health diagnoses that respondent was not treating with GAD's prescription medications.

During the proceedings, multiple police officers and caseworkers testified about respondent's alcohol abuse, inability to control GAD's behavior, and failure to properly provide him with mental health services. Respondent denied having a substance abuse issue, denied stating she could not control GAD, and denied failing to provide for his mental health because he was seeing a counselor at school. The trial court took jurisdiction over GAD under MCL 712A.2(b)(1) (parent, while able, neglects or refuses to provide care, subjecting child to risk of physical or mental harm), and MCL 712A.2(b)(2) (environment, by neglect, drunkenness, cruelty, depravity, or criminality by parent, is unfit for child). This appeal followed.

## II. STANDARDS OF REVIEW

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re COH, ERH, JRG, & KBH, Minors*, 495 Mich 184, 203-204; 848 NW2d 107 (2014) (quotation marks and citation omitted). "Thus, under the clear-error standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *Id.* at 204 (quotation marks and citation omitted).

## III. ANALYSIS

Respondent argues the trial court clearly erred when it took jurisdiction over GAD. According to respondent, there was no evidence that her alcohol use impaired her parenting ability, nor any evidence she had a substance abuse problem. Respondent asserts that it was GAD's behavior which led to his removal, and this behavior continued after removal, indicating respondent was not the cause of this behavior. Respondent also claims the Department failed to offer any services to GAD before filing the petition. We disagree.

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *Id.* "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea*.*" *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Ramsey*, 229 Mich App 310, 314; 581 NW2d 291 (1998). "[T]he trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004).

The trial court took jurisdiction over GAD under MCL 712A.2(b)(1) and (2), which state, in pertinent part:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

-2-

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).]

The trial court determined, on the basis of a preponderance of the evidence, that it was proper to take jurisdiction over GAD because of respondent's frequent encounters with law enforcement arising out of her inability to control GAD's behavior. While respondent contends GAD's behavior should have been addressed in his delinquency proceedings, the trial court recognized respondent continued to deflect blame to GAD by refusing to acknowledge the impact respondent's own behavior—particularly her intoxication—had on GAD.

Respondent argues there was no evidence her alcohol use impaired her ability to parent GAD, let alone any evidence she had a problem with substance abuse. We disagree. Multiple police officers testified that respondent was visibly intoxicated when called to respondent's home for "family trouble." While respondent contends she was never formally tested to determine her blood alcohol content during these incidents, the officers testified they were trained to identify signs of intoxication and confirmed, in their opinion, that respondent was intoxicated during these encounters. While it is true respondent was only asked to undergo one drug screen after the domestic violence charges were dropped, which was negative, when the caseworker asked respondent to take a preliminary breath test to screen for alcohol, respondent refused.

Respondent also argues that, because GAD was already out of her home when the petition was filed, she could not be found neglectful for failing to provide him with a proper living environment. While it is true the trial court was required to consider the situation at the time the petition was filed, see *In re MU*, 264 Mich App at 279, the trial court was not obligated to consider the petition in a vacuum. The circumstances leading up to the petition, which formed the basis for it, involved three police calls to respondent's home for problems with GAD, two of which occurred on the same day, and one of which resulted in domestic violence charges against respondent. While the petition was not filed until three months after the domestic violence incident, GAD also stole respondent's vehicle twice within just over one week of being returned to respondent's care. These circumstances which, taken together, led to the filing of the petition, concerned situations involving drunkenness and neglect in respondent's home that existed at the time the petition was filed, thus satisfying by a preponderance of the evidence the requirements under MCL 712A.2(b)(2).

Additionally, at the time the petition was filed, respondent had already unilaterally stopped giving GAD his medications despite knowing about his numerous mental health diagnoses.

Respondent stated she stopped GAD's medications and did not return GAD to therapy because of lack of contact with the doctor and insurance issues, but never took steps to rectify any of the issues to enable GAD to obtain his medications.

Respondent also contends that GAD's behavior was the cause of his removal and, because this behavior continued after he was removed from her care, respondent was not the cause. As previously discussed, respondent had frequent encounters with law enforcement for her failure to properly manage GAD's behaviors. Each time the testifying officers responded to respondent's home, respondent was visibly intoxicated. GAD informed one of the police officers that respondent would become violent when intoxicated. Moreover, while respondent contends GAD's behaviors continued after his removal, the evidence demonstrated that GAD was well-behaved while placed with his cousin and fictive kin. While GAD was reportedly not on his medications when with his cousin, his behavior was improved, and GAD reported taking his prescribed medications while with his fictive kin.

Lastly, respondent argues the Department failed to offer any services to GAD before filing the petition. However, this argument misconstrues the purpose of child protective proceedings. GAD's behavior was not the primary reason petitioner filed a petition to have the court take jurisdiction over GAD. Rather the basis for the petition was respondent's failure to properly care for GAD, as evidenced by GAD's disruptive behavior. While it is true respondent could not have engaged in family therapy with GAD while there was a no-contact order prohibiting her from speaking with him, she was still able to place him in individual therapy and participate in individual services herself. The record also indicates the Department repeatedly tried to refer not only respondent, but also GAD, to various services, but respondent refused them all.

The trial court did not clearly err when it determined by a preponderance of the evidence that statutory grounds for jurisdiction existed. Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly