*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. WILLIAMS, Minor.

UNPUBLISHED
February 1, 2024

No. 367796
Hillsdale Circuit Court
Family Division
LC No. 22-000657-NA

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

In the adjudicative phase of this child protective proceeding, a jury trial was conducted, and the jurors found that the jurisdictional provisions in MCL 712A.2(b)(1) and (2) were proven by a preponderance of the evidence with respect to respondent-father and his minor child, SW. Accordingly, the trial court entered an order assuming jurisdiction over SW. The evidence at trial demonstrated that respondent had regularly physically and sexually abused AH, who had been respondent's minor stepdaughter and is SW's older half-sister. Respondent did not directly appeal the jury's verdict and jurisdictional order at the time. Subsequently, a termination hearing was held, and the trial court terminated respondent's parental rights to SW under MCL 712A.19b(3)(b)(*iii*) (sibling of child suffered sexual abuse) and (k)(*ii*) (parent abused child's sibling by acts of criminal sexual conduct involving attempted penetration, penetration, and assault with intent to penetrate). On appeal, respondent solely argues that the jury's adjudication verdict giving the trial court jurisdiction was not supported by sufficient evidence. We disagree and affirm.

Respondent and LW began a dating relationship in 2012, married in 2017, separated in 2020, and divorced in 2021. LW and respondent are the biological parents of SW. And LW is the biological mother of AH. Respondent is not AH's biological father; he had been her stepfather, making AH and SW half-sisters. SW was born in 2019, and AH was about 10 years older than SW.

On September 9, 2022, AH provided Litchfield Police Department Sergeant Robert Phillips with a statement that respondent had been sexually abusing her for the past three years. LW also informed Sergeant Phillips about the possibility that respondent sexually abused SW because LW had noticed that SW's vagina was red after she had spent time with respondent. In a

-1-

petition filed on September 29, 2022, the Department of Health and Human Services (DHHS) alleged that respondent had sexually assaulted AH and possibly SW.[1] At the time of the petition, which the trial court authorized, respondent and LW were divorced, and respondent had been exercising parenting time with SW under an existing parenting-time order. At the preliminary hearing, respondent waived the trial court's probable-cause determination, and the court suspended respondent's parenting time with SW given the nature of the allegations and released SW to her mother.

Respondent requested a jury trial for purposes of adjudication and jurisdiction. At the trial, AH described respondent as "super abusive." She testified that respondent would smack the back of her head for no reason. AH also explained that she dreaded respondent's visits because he touched her on nearly every occasion. She revealed that when respondent once stayed overnight, she gave him something to sleep upon on the floor, but AH woke up in the morning with respondent in her bed. She divulged that respondent always used the bathroom when she was in the shower. At first, he would instruct her to stay in the shower, but as time passed, he would enter the bathroom just as she was getting out of the shower, and he would always be carrying his cell phone, leaving her with the impression that he was taking pictures or videos of her.

AH testified to incidents that occurred when she and respondent were sleeping on a couch or were getting ready to sleep on the couch. One time, AH woke up because she was "pretty sure" respondent had taken her hand and moved it near him where she "felt something" that was warm. In another incident, AH and respondent were preparing to sleep on the couch when he laid his hand on her chest, near her neck, and "then slid his hand down towards" her "breast or boob area and it . . . just [laid] there." AH further testified to an occasion when respondent picked her up and attempted to put his "private area" in her. She also described another incident when she was sleeping on a couch and respondent placed his hand under her blanket and clothes and fondled her breasts. Respondent additionally rested his hand beneath her underwear and on her vagina, placing his fingers inside her body. Afterward, according to AH, respondent instructed her not to tell LW about what had transpired.

LW testified that respondent would physically strike and shove AH and was prone to angry outbursts. She described instances in which he flipped a table so hard that it hit the ceiling, broke plates in the sink, and threw a pan of oil across the kitchen in the presence of AH and SW.

The jury found by a preponderance of the evidence that SW was subject to a substantial risk of harm to her mental well-being and that SW's home or environment by reason of respondent's criminality, cruelty, or depravity was an unfit place for SW to live. See MCL

---

[1] We note that the petition acknowledged that three-year-old SW's "[l]egal credibility could not be established . . . as she did not pass forensic interviewing protocol." The case proceeded to trial and later termination on the basis of physical and sexual assaults committed against AH. Although LW testified at trial about SW's vaginal redness, the prosecutor did not argue in closing that SW had been sexually molested. We also note that there was evidence presented at the trial on adjudication that respondent had physically abused and battered AH back in 2017, leading to the intervention by Children's Protective Services and respondent's participation in parenting classes.

712A.2(b)(1) and (2). Accordingly, the trial court entered an order taking jurisdiction over SW in relation to respondent.[2] And respondent did not directly appeal the jury's verdict and jurisdictional order. Subsequently, a termination hearing was held. The trial court found that MCL 712A.19b(3)(b)(*iii*) and (k)(*ii*) had been established by clear and convincing evidence, relying heavily on the doctrine of anticipatory neglect or abuse, and that a preponderance of the evidence demonstrated that termination of respondent's parental rights was in SW's best interests.

On appeal, respondent argues that the jury's verdict that provided the trial court with the necessary statutory basis to assume jurisdiction was not supported by sufficient evidence. The gist of respondent's legal argument is that there was no risk of harm to SW and that she resided in a home where there was no criminality, cruelty, or depravity. Therefore, according to respondent, there was insufficient evidence to establish MCL 712A.2(b)(1) or (2). The factual reasons given by respondent in support of his stance are that SW did not live with respondent, that SW resided with her mother, who was divorced from respondent, and that respondent had no visitation rights. We reject respondent's arguments.

Because respondent did not appeal the adjudication verdict and associated jurisdictional order until after the subsequent termination hearing was conducted and respondent's parental rights were terminated, the sufficiency issue was not properly preserved and thus our review is for plain error affecting substantial rights. See *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) ("adjudication errors raised after the trial court has terminated parental rights are reviewed for plain error"); *In re Baham*, 331 Mich App 737, 744-745; 954 NW2d 529 (2020) (the respondent failed to raise her argument that the trial court erred by finding grounds to exercise jurisdiction until after the termination of her parental rights; therefore, review is for plain error affecting substantial rights).[3] Under plain-error review, a respondent is required to establish that "(1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected . . . substantial rights." *In re Ferranti*, 504 Mich at 29. Additionally, it must be shown that the error seriously affected the integrity, fairness, or public reputation of the child protective proceeding. *Id*.

In *In re Mota*, 334 Mich App 300, 313-314; 964 NW2d 881 (2020), this Court discussed procedural aspects of termination cases:

> The DHHS, following an investigation, may petition a court to take jurisdiction over a child. The petition must contain essential facts that, if proven, would permit the court to assume and exercise jurisdiction over the child. If a petition is authorized, the adjudication phase of the proceedings takes place, and

---

[2] LW was not a respondent in the case.

[3] Ordinarily, "[w]e review the trial court's decision to exercise jurisdiction for clear error in light of the . . . findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). This Court has also stated that "[o]n appeal, our inquiry is whether the error alleged was of such magnitude that, but for it, there was an insufficient basis for the . . . court to assume jurisdiction." *In re Toler*, 193 Mich App 474, 476; 484 NW2d 672 (1992).

the question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b)[4] so that it can enter dispositional orders, including an order terminating parental rights.

* * *

> If a trial is held regarding adjudication, the respondent is entitled to a determination of the facts by the jury or judge, the rules of evidence apply, and jurisdiction must be established by a preponderance of the evidence. [Quotation marks and citations omitted.]

A "preponderance of the evidence" is defined as evidence that, "when weighed with that [evidence] opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). We give due deference to the jurors' assessment of witness credibility given their special opportunity to observe the witnesses. See *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020).

Respondent argues that there was insufficient evidence to support jurisdiction under MCL 712A.2(b)(1) and (2) because SW resided with her mother and stopped living and visiting with respondent after the divorce and suspension of his parenting time. This argument is misplaced. This Court has explained that MCL 712A.2(b)(1) and (2) "speak[] in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). In this case, when DHHS's petition was filed respondent was exercising parenting time with SW pursuant to a parenting-time order.

---

[4] MCL 712A.2(b) provides, in pertinent part, that a court has the following jurisdiction and authority:

> Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . . .

> * * *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . . .

Therefore, at the time of the petition, respondent was a parent legally responsible for SW during his parenting time, MCL 712A.2(b)(1), and was providing her a home or an environment during the parenting time, MCL 712A.2(b)(2).

Further, there was more than sufficient evidence showing that respondent posed a substantial risk of harm to SW's mental well-being, MCL 712A.2(b)(1), and that his home was an unfit place for SW to stay or live, MCL 712A.2(b)(2). There was uncontroverted evidence that respondent had anger problems, was violent and destructive, and that he physically and sexually abused and assaulted AH on a regular basis, which included sexual penetration. Although respondent makes no mention or argument on appeal concerning the doctrine of anticipatory neglect and abuse, it was the centerpiece of the DHHS's case during both the adjudicative and dispositional phases. In *In re Kellogg*, 331 Mich App at 259, this Court observed:

> In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction. The doctrine of anticipatory neglect recognizes that how a parent treats one child is certainly probative of how that parent may treat other children. Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect. [Quotation marks, citations, brackets, and emphasis omitted.]

We recognize that AH had been respondent's stepdaughter and is not his biological child; however, this Court has applied the doctrine under similar circumstances when a stepchild suffered the direct impact of neglect or abuse. See *In re Mota*, 334 Mich App at 323 ("Although the doctrine is not a perfect fit in this case because LP is not respondent's child, respondent had been raising LP for a number of years as if she were his daughter."). In this case, respondent was involved in raising AH for several years as if she were his own child. Again, respondent does not contest the application of the doctrine of anticipatory abuse. Respondent's physically and sexually abusive treatment of his one-time stepdaughter was certainly probative of how he might treat SW and provided sufficient evidence to support the jury's verdict and the jurisdictional order. We hold that there was no error, plain or otherwise.

We affirm.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron