*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
December 11, 2025
8:47 AM

*In re* B. E. SURGESON, Minor.

No. 375633
Bay Circuit Court
Family Division
LC No. 24-013870-NA

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Respondent-father appeals of right the trial court's order assuming jurisdiction over his minor child, BS, under MCL 712A.2(b)(1) (failure to provide proper or necessary support), and MCL 712A.2(b)(2) (unfit home or environment). Respondent-father contends that the trial court committed clear error when it found, by a preponderance of the evidence, that there were statutory grounds sufficient to assume jurisdiction over the child. We affirm.

## I. FACTUAL BACKGROUND

On October 7, 2024, the Department of Health and Human Services (DHHS) submitted a petition asking the trial court to remove BS from respondent-father's care several weeks after BS's birth. On September 12, 2024, when BS was born, respondent-mother[1] tested positive for several narcotics. BS's umbilical cord also tested positive for illegal drugs, and medical personnel had to administer medication to combat symptoms resulting from drug withdrawal. The petition alleged that respondent-father was present at the hospital in respondent-mother's room after the child was born, and that nursing staff members found a needle that did not belong to the hospital in the room. Nursing staff members saw respondent-father handling a "red-looking" pill that was characterized as "fentanyl candy." A search of the hospital room also turned up a digital scale that respondent-

---

[1] Respondent-mother has not appealed any ruling from the trial court, so we need not consider the trial court's exercise of jurisdiction over BS in relation to her.

-1-

father had put in a drawer that he claimed was used "to weigh gold." As a result, respondent-father was escorted out of the hospital for having purported drug paraphernalia and because he refused to be searched by hospital security staff.

At a pretrial hearing, respondent-mother admitted to most of the allegations in the petition. In contrast, respondent-father asked for a bench trial to contest whether the trial court could assume jurisdiction over BS with respect to him. During the trial on April 16, 2025, six witnesses testified, and then the trial court found that the preponderance of the evidence established statutory grounds to assume jurisdiction over BS through respondent-father. After the trial court memorialized those findings in an order issued on April 16, 2025, respondent-father appealed to this Court.

## II. LEGAL ANALYSIS

On appeal, respondent-father argues that the trial court erred in finding grounds to exercise jurisdiction over BS. At an adjudication trial, the petitioner must prove, by a preponderance of the evidence, that one statutory basis supports the exercise of jurisdiction under MCL 712A.2(b). *In re Faulkner*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369927); slip op at 3. A trial court's decision to exercise jurisdiction over a child is reviewed only for clear error in light of the trial court's findings of fact. *In re Lange*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166509); slip op at 6. "A finding of fact is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Hockett*, 339 Mich App 250, 254; 981 NW2d 534 (2021). We "must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

Here, the trial court exercised jurisdiction over BS under MCL 712A.2(b)(1) and (2), which grant the trial court "[j]urisdiction in proceedings concerning a juvenile under 18 years of age" in specified circumstances. First, under MCL 712A.2(b)(1), the trial court may exercise jurisdiction when the child's parent, "when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals . . . ." Second, according to MCL 712A.2(b)(2), the trial court may exercise jurisdiction when the child's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, . . . is an unfit place for the juvenile to live in." Because MCL 712A.2 "speaks in the present tense," the court "must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004).

## A. JURISDICTION UNDER MCL 712A.2(b)(2)

The trial court found that MCL 712A.2(b)(2) authorized the court to exercise jurisdiction over BS. The record indicates that, at the time the petition was filed, BS was suffering from health issues related to substance abuse. Respondent-mother admitted that she used cocaine, methadone, fentanyl, xylazine, and opiates before the child's birth. She also admitted that the child's umbilical cord tested positive for cocaine, fentanyl, methadone, morphine, and codeine. She recognized that the child was dealing with withdrawal symptoms and was given several doses of morphine to treat his condition. At respondent-father's bench trial, a social worker from the hospital where the child was born corroborated those admissions made by respondent-mother.

-2-

In contrast, respondent-father testified that he was surprised that BS's umbilical cord and respondent-mother tested positive for drugs. He denied ever using drugs with respondent-mother, and he asserted that he had not used drugs since 2019. He denied ever receiving substance-abuse treatment at a rehabilitation clinic. His former parole agent also testified that he had encountered no problems involving substance abuse with respondent-father during the 24-month period when he supervised respondent-father. But that position was undermined by inconsistencies stemming from respondent-father's testimony as well as testimony given by DHHS workers assigned to BS's case. We must defer to the trial court's credibility assessments of testifying witnesses. *LaFrance*, 306 Mich App at 723. Respondent-father acknowledged he had an extensive history of drug use. He admitted using opiates, fentanyl, methamphetamine, cocaine, marijuana, and possibly xylazine. Beyond that, in December 2024, he tested positive for cocaine and methadone. And after he tested positive for methadone in January 2025, he refused to submit to further drug testing. The DHHS case worker assigned to the case testified that, contrary to respondent-father's assertion that he had never received substance-abuse treatment at a rehabilitation clinic, respondent-father told her that he was receiving methadone treatment at a rehabilitation clinic. Those contradictions caused the trial court to find that respondent-father was not a credible witness.

The trial court also heard testimony from witnesses who contradicted respondent-mother's testimony that respondent-father had no substance-abuse issues. The DHHS case worker testified that respondent-mother spoke to her once before the petition was filed and two more times after it was filed. During each of the conversations, respondent-mother told the case worker that she was concerned because respondent-father was using drugs and was not ready to stop using drugs. The trial court not only heard all those concerns, but also received evidence that respondent-father had drug paraphernalia in respondent-mother's hospital room on the day that BS was born. A social worker from the hospital testified that respondent-mother advised the nurses on the day she gave birth that respondent-father was going in and out of her room "to get high."

To be sure, the fact that a parent used drugs during pregnancy does not necessarily indicate that the parent will abuse or neglect a child after birth. *In re Simonetta*, 340 Mich App 700, 711-712; 987 NW2d 919 (2022) ("Parental substance abuse, positive toxicology or withdrawal in an infant does not in and of itself indicate that child abuse or neglect has occurred or that the infant has been severely physically injured."). Additionally, we have decided that, in the context of the termination phase of the proceedings, "drug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through the operation of the doctrine of anticipatory neglect." *LaFrance*, 306 Mich App at 731.

But the record reveals that respondent-father's denials of substance-abuse issues impaired his ability to recognize the negative and harmful effects that drugs had on his child. Evidence was offered that respondent-father minimized the danger substance abuse posed to his child. Indeed, he believed that the medication the child was taking to address his withdrawal symptoms was the cause of the symptoms. A psychologist who examined respondent-father concluded that he was physically capable of taking care of BS, but nonetheless recommended court intervention "due to [respondent-father]'s past substance abuse concerns, his depression, lack of insight and history of poor decision making and actions . . . ." Those concerns were not unfounded, especially given that respondent-father brought drug paraphernalia into respondent-mother's hospital room while she was in labor.

Respondent-father's drug abuse could result in harm to BS in the future because the use of potent drugs like those he had used in the past (opiates, fentanyl, methamphetamine, and cocaine) can prevent a caregiver from providing proper care to a child. See *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (exhibiting behavior that would put a child at risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j)). Here, the trial court evidently found that the fact that BS suffered from drug-related health issues before he was born, on the day he was born, and immediately after he was born justified assuming jurisdiction over BS in light of the evidence that respondent-father was actively using drugs in the time period when the petition was filed. Respondent-father's continued denials of substance-abuse issues and his minimization of the harmful effects of drugs on his child substantiates the trial court's legitimate concern that respondent-father's drug use would expose the child to further health issues. Thus, we do not have a definite and firm conviction that the trial court made a mistake. See *Faulkner*, ___ Mich App at ___; slip op at 3.

## B. JURISDICTION UNDER MCL 712A.2(b)(1)

The trial court found that it was authorized by MCL 712a.2(b)(1) to exercise jurisdiction over BS. Respondent-father contests the trial court's reliance on his unstable housing at the time the petition was filed to find that he could not provide proper or necessary care to BS. Respondent-father testified at the trial that he had been living in his own residence during the month when the petition was filed. But the record contains conflicting evidence about respondent-father's living situation when the petition was filed early in October 2024. The petition alleged that respondent-father and respondent-mother "were residing in the homeless shelter prior to [BS] being born and [they] do not have stable housing." Respondent-mother confirmed she was living in a homeless shelter before she gave birth to BS. She denied that respondent-father was ever in the shelter with her, but respondent-father testified that he was "living between places" when BS was born. Before that, respondent-father was living at several different places, including "a couple friends' houses" and his "grandmother's occasionally." When asked why he was living in that manner, respondent-father explained that "[t]hat was the way I chose to live" for "months."

The trial court found that the testimony given by respondent-father and respondent-mother lacked credibility due to so many inconsistencies. The trial court concluded that respondent-father did not have stable housing when the petition was filed, and that that issue posed a risk of harm to BS if the child were released into respondent-father's care. The risks to BS—a newborn child who was receiving treatment for withdrawal symptoms—would have been compounded by respondent-father's substance-abuse issues and his inability to recognize the risk of harm posed to BS. Thus, we are not left with a definite and firm conviction that the trial court committed an error in finding that respondent-father lacked stable housing at the time that the petition was filed. *LaFrance*, 306 Mich App at 723. Because that finding is supported by a preponderance of the evidence, the trial court did not err in finding a statutory ground sufficient to assume jurisdiction over BS with respect to respondent-father.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young

-4-