*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re JMG/JGG/JMG, Minors.

UNPUBLISHED
July 25, 2024

No. 368147
Genesee Circuit Court
Family Division
LC No. 23-139045-NA

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order of the trial court terminating her parental rights to her minor children, JMG-1, JGG, and JMG-2[1], pursuant to MCL 712A.19b(3)(b)(*ii*) (child or sibling suffered physical or sexual abuse, parent failed to prevent the abuse, and there is a reasonable likelihood child will suffer further abuse if placed with parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In April 2023, the Department of Health and Human Services (DHHS) filed a petition to take jurisdiction over JMG-1, JGG, and JMG-2 according to MCL 712A.2(b)(1) and (2). The petition sought to remove the children from their mother's care and terminate her parental rights in accordance with MCL 712A.19b(3)(b)(ii), (b)(iii), and (j). The allegations alleged that the kids resided with their mother and her spouse, CH, who was their stepfather. The petition claimed that CH had been sexually abusing JMG-1 while the mother was aware of the abuse but failed to intervene. In the petition, it was alleged that CH had inappropriately touched JMG-1 and wanted JMG-1 to sleep in bed with him. Despite concerns raised by several individuals about the nature of JMG-1 and CH's relationship, the mother allowed JMG-1 to travel alone with CH to a different state, where the abuse continued. After a preliminary hearing, the trial court approved the petition, placed the minor children under the supervision of DHHS, and ordered supervised parenting time with their father. In August and September 2023, a joint adjudication bench trial and termination

---

[1] In order to protect the children's privacy, we do not identify them by name in the caption or body of this opinion.

hearing occurred. Genesee County Child Protective Services Investigator Erica Blair testified that JMG-1 was sexually abused by CH, as confirmed by a medical examination. Respondent-mother took JMG-1 to the hospital after disclosure of the abuse. JGG and JMG-2 were also living in the home at the time. JMG-1 was 11 years old, JMG-2 was eight, and JGG was nine.

JMG-1 testified that she had a different relationship with CH than her other siblings. According to JMG-1, respondent-mother did not like this special treatment and would argue with CH about it. JMG-1 testified that, once in a while, CH would help her wash her hair while she was nude. JMG-1 also testified that, on occasion, she slept in the same bed as CH and respondent-mother.

JMG-1 testified that she traveled to Kentucky alone with CH. On the trip, JMG-1 and CH slept in the same bed, and they "had sex." JMG-1 also testified that she "had sex" with her stepfather before the trip on one other occasion and that CH had previously asked JMG-1 to touch him between his legs. JMG-1 disagreed that the respondent-mother should have known about what was happening between her and CH but testified that if anyone else had observed their relationship, "[t]hey'd notice it was probably different." When JMG-1 returned from the trip to Kentucky, she told her mother about CH's abuse, and respondent-mother took her to the hospital.

Blair testified that, based on her investigation, she believed that the respondent-mother had been informed about concerns regarding CH's inappropriate behavior. Therefore, the respondent-mother had reason to know about the improper relationship between CH and JMG-1. Blair stated that she believed the respondent-mother enabled CH's abuse of JMG-1 by allowing her to go to Kentucky, despite prior concerns. Additionally, Blair mentioned the existence of text messages between the respondent-mother and CH's former partner where the respondent-mother inquired whether CH groomed children. She also testified that the respondent-mother's father and stepmother had expressed concerns to her and to respondent-mother about the relationship between JMG-1 and CH.

The father of the three minor children testified that he believed there was an inappropriate relationship between JMG-1 and CH, and he was concerned that JMG-1 was being "molested." He repeatedly expressed concerns about the relationship between CH and JMG-1 to the mother of the children for nearly a year. However, she would become angry and "block" him when he broached the subject. His concerns revolved around what he considered "inappropriate" social media posts, comments from CH's family, and untruthful behavior from the respondent-mother. The father believed that the mother kept JMG-1 away from him more than his other children to "cover up things that were going on that she was aware of." He went to court in October 2022 to seek sole custody of his children due to these concerns. After CH failed bring JMG-1 to the father as agreed, he filed a police complaint. The father had doubts about returning the children to the mother and was concerned for the well-being of his other children. He also mentioned truancy incidents and academic difficulties when the children were in his care, as well as concerns about unmet educational and medical needs of his other child, JGG.

Respondent-mother challenged much of the petitioner's evidence, though she admitted CH washed JMG-1's hair while she was in the shower, but claimed it only happened twice and that she was in view of them the entire time. Respondent-mother denied: (1) having arguments with CH about the children; (2) she denied that CH would become upset if JMG-1 did not sleep with

them; and (3) she denied that her father and stepmother expressed concerns about JMG-1 and CH. According to the respondent, her stepmother spoke to her once about JMG-1 sleeping with her and CH, but it was not voiced as a concern. The respondent clarified that she texted CH's former partner because she was concerned that CH was interested in his 19-year-old coworker. She also testified that the children's father did not raise concerns about CH and JMG-1 with her until March 31, 2023, the same day CH and JMG-1 returned from Kentucky. When they returned, she spoke with JMG-1 after CH had fallen asleep. JMG-1 at first did not disclose anything but then eventually told her that CH "inappropriately touched her." She and JMG-1 left the house and called the police. She testified that she did not know that something was going on before the children's father contacted her that day.

The father of the children stated that he only learned about JMG-1 being in Kentucky from the respondent-mother after the trip. He also testified that respondent-mother had lied to him about JMG-1's whereabouts. The respondent-mother claimed that she told him JMG-1 was going out of town with a friend because "he was an absent father." She also stated that she was still married to CH but that she had filed for divorce. At the time of the termination trial, CH was out on bond. The respondent-mother testified that she planned to move out of the house and relocate to a new home in another town.

Blair testified that the children were thriving under their father's care. She testified that their father had a stable home, a full-time job, family support, ensured the children attended their appointments, and improved JGG's behavior at school. Blair expressed the belief that termination was necessary due to serious allegations and respondent-mother's failure to protect JMG-1 from abuse despite family and her father's concerns. Child Protection Services worker Sophia Winningham also testified that the children were doing well with their father, receiving counseling, and having their needs addressed. She stated that there was no negative feedback about the mother's behavior and that the children missed her, but they were adjusting to the new placement. Ultimately, it was concluded by Winningham that being with their father was in the children's best interests. JMG-1 expressed that she would love to live with both parents but was doing well with her father, although she missed her mother.

The trial court ruled that the Department of Health and Human Services (DHHS) had proven by a preponderance of the evidence that one or more of the allegations in the petition were true and consequently took jurisdiction over JMG-1, JGG, and JMG-2 under MCL 712A.2(b)(1) and (2). Subsequently, the trial court found that the petitioner had provided clear and convincing evidence to justify termination under MCL 712A.19b(3)(b)(ii).

The trial court determined that CH had sexually abused JMG-1, and that the respondent-mother had been made aware of multiple concerns about their relationship but failed to take proper measures to protect JMG-1 from CH. The trial court found that instead of addressing the concerns, the respondent-mother had sent JMG-1 to Kentucky alone with CH. The court also deemed the respondent-mother's claim of being unaware of any concerns as unbelievable and took judicial notice that CH, not the respondent-mother, had filed for divorce, contrary to her testimony. Furthermore, the court found that the respondent-mother had lied to the children's father about JMG-1's whereabouts because she knew he would disapprove. Therefore, the court concluded that the respondent-mother had the opportunity to prevent the sexual abuse by CH against JMG-1 and failed to do so.

Additionally, the court found that there was a reasonable likelihood that the child would suffer abuse if placed back in the respondent-mother's home because CH was out on bond and living in the community.

The court similarly concluded that it was in the best interests of the children to terminate the respondent-mother's parental rights. The court found that although the respondent-mother had a strong bond with her children, there was a critical need for stability and permanency in their lives, which their father could provide. The court also observed that the children's father was able to offer them suitable housing and a structured environment, and the children were thriving under his care. In contrast, the court determined that, due to the circumstances involving one of the children, the respondent-mother was not capable of providing the necessary stability and permanency for all three children.

## II.  STANDARDS OF REVIEW

Child protective proceedings consist of two distinct phases: the adjudicative phase and the dispositional phase. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).  In the adjudicative phase, the "trial court determines whether it may exercise jurisdiction over the minor child pursuant to MCL 712A.2(b)."  To acquire jurisdiction, a trial court must find by a preponderance of the evidence that the child comes within the requirements of MCL 712A.2.  *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).  This Court reviews a "trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact."  *Id*.  This Court also reviews "interpretation and application of statutes and court rules de novo."  *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021) (quotation marks and citation omitted).  "If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests."  *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted).  See also MCL 712A.19b(5).  This Court reviews "the trial court's determination of statutory grounds for clear error."  *Sanborn*, 337 Mich App at 272.  See also MCR 3.977(K).  This Court also reviews the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Sanborn*, 337 Mich App at 272-273 (quotation marks and citation omitted).  In termination cases, this Court "defer[s] to the special ability of the trial court to judge the credibility of witnesses." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

## III. JURISDICTION

Respondent-mother is arguing two points regarding the trial court's jurisdiction. First, she claims that the trial court erred in taking jurisdiction over JMG-1 because there was insufficient evidence to show that she knew about CH's abuse of JMG-1 and failed to protect him. Secondly,

she argues that the trial court erred in taking jurisdiction over JGG and JMG-2 because it did not make any specific findings related to these children and instead only speculated that they were at risk due to CH's behavior towards JMG-1.

MCL 712A.2(b) provides, in relevant part, that Michigan courts have jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship . . . .
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).]

MCL 712A.2 "speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004).

"The fact that there are statutory grounds to assume jurisdiction over one minor child does not automatically mean that there are statutory grounds to assume jurisdiction over a second minor child." *In re Kellogg*, 331 Mich App 249, 254; 952 NW2d 544 (2020). A court must find an independent factual basis as to each child to conclude that all children in a petition come within the statutory requirements of MCL 712A.2(b). *Id*. However, the inquiry does not stop there. *Id*. at 258. "In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction." *Id*. at 259. "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children. Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *Id*. (quotation marks and citations omitted; alterations in *Kellogg*). The doctrine of anticipatory neglect permits the court to infer that a parent's treatment of one child may be probative of how the parent may treat another child. *Id*. When there are marked and significant differences between multiple children, such as age or medical condition, the probative value of the inference is diminished. *Id*.

The trial court's decision to exercise jurisdiction over the three children was not clearly erroneous in light of its factual findings. See *BZ*, 264 Mich App at 295. By claiming on appeal that respondent-mother was unaware of the abuse, she is asking this Court to discredit the trial court's credibility determination and believe her testimony over that of Blair, JMG-1, and the children's father. However, this Court "defer[s] to the special ability of the trial court to judge the credibility of witnesses." *White*, 303 Mich App at 711.

The trial court found sufficient evidence to show that the respondent-mother failed to address concerns about CH and JMG-1 and did not protect JMG-1 from sexual abuse, despite her claims. The evidence supporting this includes the fact that the respondent-mother asked CH's former partner about CH's capability of grooming children, the children's father expressed concerns multiple times over almost a year, respondent-mother's stepmother also raised concerns, respondent-mother lied to the children's father about JMG-1's whereabouts, and respondent-mother and CH argued about CH's desire to have JMG-1 sleep in bed with them and treating JMG-1 differently.

The trial court's finding that respondent-mother failed to adequately protect JMG-1 from CH's sexual abuse was sufficient for the court to take jurisdiction of JMG-1 pursuant to MCL 712A.2(b)(1) because it evidenced respondent-mother's failure to provide proper care to JMG-1 at the time of petition. This was also sufficient for the court to take jurisdiction over JGG and JMG-2 pursuant to MCL 712A.2(b)(1) under the anticipatory neglect doctrine. See *Kellogg*, 331 Mich App at 259. The evidence regarding the respondent-mother's treatment of JMG-1 was probative of how the respondent-mother was likely to treat her other children. See MCL 712A.2(b)(1); *Kellogg*, 331 Mich App at 259. Respondent-mother argues that the doctrine of anticipatory neglect should not apply to the present case because JGG was a different sex than JMG-1 and JMG-2 was younger than JMG-1. However, for the trial court to acquire jurisdiction, a trial court must find by merely a preponderance of the evidence that the child comes within the requirements of MCL 712A.2. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). This Court reviews a "trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *Id*. Based on these standards of review, we cannot find that the trial court clearly erred in exercising its jurisdiction over the children.

The trial court did not clearly err when it took jurisdiction over the children under MCL 712A.2(b)(2). It is undisputed that CH sexually abused JMG-1 while all three children lived in the home. There was evidence presented that the respondent-mother was aware of CH's misconduct but did nothing to remove him from the home or protect her children. Therefore, the trial court made the right decision when it concluded that, at the time the petition was filed, the respondent-mother's home was not a suitable place for the children due to CH's sexual abuse of JMG-1 and the respondent-mother's indifference. See MCL 712A.2(b)(2).

IV.  STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues that the trial court erred when it determined that there was a statutory ground for termination pursuant to MCL 712A.19b(3)(b)(*ii*) because (1) respondent-mother did not know that CH was abusing JMG-1, and (2) there was no evidence of harm to JGG or JMG-2.

The statutory grounds for termination are enumerated in MCL 712A.19b(3), which provides in relevant part:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

*  *  *

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home. [MCL 712A.19b(3)(b)(*ii*).]

MCL 712A.19b(3)(b)(*ii*) "is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." *In re LaFrance Minors*, 306 Mich App 713, 725; 858 NW2d 143(2014)., and commonly referred to as the doctrine of anticipatory neglect.

The doctrine of anticipatory neglect is a legal concept used in child protection proceedings. It posits that a parent's treatment of one child can be indicative of how they may treat other children, thus allowing the courts to take preventive measures even before actual harm occurs to other children. *In re Kellogg*, 331 Mich App at 259. The doctrine "inherently acknowledges that no actual detrimental act has occurred." *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021). The doctrine, however, does not apply where the neglected or abused child and the other children differ significantly in ages or needs. See *In re LaFrance*, 306 Mich at 71; *In re Kellogg*, 331 Mich App at 259. (holding that the probative value of the anticipatory neglect doctrine was diminished by significant differences between the children, such as age and medical conditions).

When a case involves termination of a parent's parental rights under MCL 712A.19b(3)(b)(*ii*) to multiple children, the statute does "not require that there be clear and convincing evidence that the children were at risk from the same abuser;" rather, this subparagraph "addresses the harm occasioned by a parent who is unwilling or unable to protect his or her children from abuse." *In re Gonzales/Martinez*, 310 Mich App 426, 432; 871 NW2d 868 (2015) (holding that sufficient evidence supported termination of a respondent's parental rights when "[t]he evidence established that respondent placed her desire to be with her boyfriend—despite his abuse—over the needs of her children, and there was evidence that she would likely continue to place her personal desires over her children's welfare").

Here, an anticipatory neglect inference is clearly warranted. It is undisputed that CH sexually assaulted his 11-year-old step-daughter, and despite being forewarned, the respondent-mother allowed CH, on numerous occasions, to be alone with JMG-1, and to take her to another state where she knew they would be sleeping in the same motel room.

The abuse in this case involved numerous occurrences of sexual abuse by CH. In *In re Mota*, 334 Mich App 300, 303, 321-322; 964 NW2d 881 (2020), the trial court terminated the respondent's parental rights to his three minor children because of domestic violence in the home and a single act of sexual abuse of one of the children. The DHHS reported that the abused child had informed his maternal grandmother that the respondent had entered the child's bedroom, pulled down the child's pants and underwear, touched the child's buttocks, and used a flashlight or phone light, presumably to take pictures of the child. *Id*. at 304-305. On appeal, this Court held that, although there had only been one act of sexual abuse against the child, it was "especially egregious" because the child considered the respondent a "father figure." *Id*. at 322. This Court also ruled that, under the doctrine of "anticipatory neglect," record evidence did not support the

respondent's claim that he did not pose a danger to the other children. *Id*. at 323. Therefore, this Court concluded that the trial court did not clearly err by terminating the respondent's parental rights to the children. *Id*.

The conduct presented here is more egregious than the illicit touching of a child's buttocks and the potential photographing that occurred in *In re Mota*. And, unlike *In Re LaFrance*, 306 Mich App at 715, 730-731, which rested on the neglect of one child who had unusual health issues relative to the older children, the evidence established that the respondent-mother allowed the sexual abuse to continue after being warned. There is no indication in the record from which the trial court could have concluded that the respondent-mother would have intervened on behalf of her other two children in the event they were being sexually abused. Instead, the evidence indicated that the respondent-mother prioritized her own needs over her children's well-being, putting them at risk of future abuse. Since case law allows for the termination of parental rights if one sibling has suffered abuse under similar circumstances, the trial court did not need to find that the mother's actions had caused actual harm to JGG and JMG-2. *In re Gonzales/Martinez*, 310 Mich App at 432. "The Legislature did not require that there be clear and convincing evidence that the children were at risk of harm from the same abuser. Rather, MCL 712A.19b(3)(b)(*ii*) addresses the harm occasioned by a parent who is unwilling or unable to protect his or her children from abuse." *Id*. As a result, the trial court did not err in terminating the mother's parental rights to all three children.

## V. BEST INTERESTS

The respondent-mother argues that the trial court made an error in finding that the termination of her parental rights was in the best interests of three of her minor children. She asserts the trial court did not consider the bond between the children and their mother, grouped all three children together during the best-interests analysis, and failed to consider that the children were currently in a relative placement with their father. The record contradicts the arguments made respondent-mother.

To determine whether termination is in a child's best interests,

> [t]he trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

The trial court has a duty to decide the best interests of each child individually. *Olive/Metts*, 297 Mich App at 42. "[I]f the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *White*, 303 Mich App at 715. However, this does not mean that a "trial court errs if it fails to explicitly make individual and—in many cases—redundant factual findings concerning

each child's best interests." *Id*. "[T]he fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. "Relative" is defined, in part, as an individual who is at least 18 years of age and is

> [r]elated to the child within the fifth degree by blood, marriage, or adoption, including the spouse of an individual related to the child within the fifth degree, even after the marriage has ended by death or divorce, the parent who shares custody of a half-sibling, and the parent of a man whom the court has found probable cause to believe is the putative father if there is no man with legally established rights to the child. [MCL 712A.13a(1)(j)(*i*).]

Contrary to the assertions of the respondent-mother on appeal, the trial court did review whether termination was suitable given the minor children's placement with their father. See *Olive/Metts*, 297 Mich App at 43. After its review, the trial court found termination to be appropriate. The trial court was correct in finding that, despite a strong bond between the respondent-mother and her children, other factors were more important. The evidence indicated that the children were closely bonded with their father, who had a steady job and a strong support system from his family. He made sure that the children received appropriate medical care, something that was allegedly lacking while under the care of respondent-mother. Additionally, the children were receiving therapy and, in contrast to their time in their mother's custody, were excelling in school while under their father's care. Witnesses testified that it was in the best interests of the children to be with their father, as he could provide them with stability and permanency, which the respondent-mother could not. Accordingly, on this record, we discern no errors in the proceedings.

Affirmed.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett