*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 19, 2024

*In re* QUINTON, Minors.

No. 369361
Livingston Circuit Court
Family Division
LC No. 2023-016562-NA

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

PER CURIAM.

Respondent-father[1] appeals as of right the orders of adjudication, in which the trial court assumed jurisdiction over the minor children, AQ, TQ, and WQ, under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment) and (b)(2) (unfit home environment due to neglect).[2] We reverse and remand for further proceedings.

---

[1] Respondent-mother entered a plea of no-contest to the allegations detailed in the petition concerning AQ. The trial court additionally entered an order of adjudication against respondent-mother with regard to TQ and WQ pursuant to MCL 712A.2(b)(1) and (2). Respondent-mother has not appealed the adjudicatory orders.

[2] We note that there were two orders of adjudication entered on December 20, 2023. One order concerned the petition regarding AQ, and the second order concerned the petition with respect to TQ and WQ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

## I. FACTUAL BACKGROUND

On August 4, 2023, the Department of Health and Human Services (DHHS) filed a temporary wardship petition[3] requesting that the trial court exercise jurisdiction over AQ. The petition alleged that (1) on March 4, 2023, AQ was transported to a children's hospital while under respondent-mother's care after he suffered a seizure following exposure to an unknown substance, which was suspected to be ketamine, and that (2) when AQ arrived at the hospital, he was "actively seizing," required medication to remedy his symptoms, and tested positive for amphetamines and methamphetamines. The petition further contended that on March 4, 2023, Children's Protective Services (CPS) and law enforcement conducted an interview with respondent-mother, during which she denied providing AQ with any drugs and attributed AQ's medical emergency to the accidental ingestion of a substance found in the trash while respondent-mother was housesitting for a friend at a home on Turquoise Drive in Northfield Township, Michigan. Officers subsequently searched respondent-mother's purse in AQ's hospital room and discovered various drug paraphernalia. The petition further provided that due to the aforementioned incident, the trial court entered a removal order on March 10, 2023, resulting in AQ's placement with respondent-father, and respondent-mother was charged with second-degree child abuse, MCL 750.136b(3).

The petition additionally detailed that on July 18, 2023, respondent-mother, while pregnant with TQ and WQ, tested positive for methamphetamines, cannabinoids, and opioids, and that on July 21, 2023, respondent-mother gave birth to TQ and WQ, who also suffered from substance withdrawals. Furthermore, respondent-father allowed AQ to meet with respondent-mother at the hospital after the birth of TQ and WQ despite respondent-mother's substance use and a court order precluding unsupervised contact. Also, respondent-father continued to plan with respondent-mother regarding the children notwithstanding the risk of harm to AQ. Additionally, petitioner alleged that respondent-father was repeatedly uncooperative with petitioner and that he refused to give the DHHS access to AQ. Following a preliminary hearing, the trial court authorized the petition and removed AQ from respondent-father's custody.

On August 31, 2023, the DHHS filed a temporary wardship petition requesting that the trial court assume and exercise jurisdiction over TQ and WQ. The petition alleged that on August 7, 2023, AQ was considered absent without legal permission (AWOLP) and that AQ was subsequently discovered with respondents at the Turquoise Drive residence where AQ's substance-ingestion incident occurred, resulting in AQ's placement in a licensed foster-care home. The petition further contended that respondent-father was reluctant to cooperate with DHHS caseworkers and that it was contrary to the welfare of TQ and WQ to be under respondent-father's care due to concerns of physical neglect, improper supervision, and substance use. Following a preliminary hearing, the trial court authorized the petition while TQ and WQ remained at a children's hospital obtaining treatment for substance withdrawal.

---

[3] We note that a previous petition regarding AQ was filed on March 10, 2023; however, the petition solely identified respondent-mother as a respondent because respondent-father had yet to submit an affidavit of parentage; all relevant allegations in that earlier petition were incorporated in the August 4, 2023 petition regarding respondent-father.

The trial court subsequently held an adjudicatory trial on November 27 and December 14, 2023, and it determined that there were grounds to exercise jurisdiction over AQ, TQ, and WQ under MCL 712A.2(b)(1) and (2). The trial court reasoned that respondent-father violated court orders by allowing AQ to interact with respondent-mother without petitioner's supervision. Furthermore, under the doctrine of anticipatory neglect, the court found that respondent-father was unable to properly provide for the care and custody of TQ and WQ in light of his improper supervision of AQ. On December 20, 2023, the trial court entered orders of adjudication consistent with its findings on the record and set the date for a dispositional hearing. This appeal followed.

## II. JURISDICTION

Respondent-father argues that the trial court erred when it found a basis to assume jurisdiction over the minor children under MCL 712A.2(b)(1) and (2) because petitioner failed to establish those grounds by a preponderance of the evidence, as alleged in the underlying petitions.[4] We agree.[5]

"Child protective proceedings are initiated when a petition is filed in the trial court that contains facts constituting an offense against a child under MCL 712A.2(b) of the juvenile code, MCL 712A.1 *et seq*." *In re Long*, 326 Mich App 455, 459; 927 NW2d 724 (2018). Following the authorization of a petition, a trial court must adjudicate whether it may exercise jurisdiction under MCL 712A.2(b). *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). MCL 712A.2 "speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). The burden rests on the petitioner to prove by a preponderance of the evidence at least one statutory ground for exercising jurisdiction. *Ferranti*, 504 Mich at 15. "If a trial is held regarding adjudication, the respondent is entitled to a determination of the facts by the jury or judge, the rules of evidence apply, and jurisdiction must be established by a preponderance of the evidence." *In re Mota*, 334 Mich App 300, 312-313; 964 NW2d 881 (2020).

"Although child protective proceedings are initiated to protect children, the adjudicative phase is of critical importance because the procedures used in adjudicative hearings protect the

---

[4] Our discussion throughout this opinion regarding the assumption or exercise of jurisdiction by the trial court over the children pertains solely in relation to respondent-father; jurisdiction by the court over the children in relation to respondent-mother is not at issue.

[5] "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296. "Clear error [also] occurs when the trial court incorrectly chooses, interprets, or applies the law." *Johnson v Johnson*, 329 Mich App 110, 128; 940 NW2d 807 (2019) (quotation marks and citation omitted).

parents from the risk of erroneous deprivation of their parental rights." *Long*, 326 Mich App at 459-460 (quotation marks and citation omitted). "Adjudication protects the parents' fundamental right to direct the care, custody, and control of their children, while also ensuring that the state can protect the health and safety of the children." *In re Sanders*, 495 Mich 394, 422; 852 NW2d 524 (2014). "[W]hen the state seeks only to deprive *one* parent of the right to care, custody and control, the state is only required to adjudicate *that* parent." *Id*. In contrast, "[w]hen the state is concerned that *neither* parent should be entrusted with the care and custody of their children, the state has the authority—and the responsibility—to protect the children's safety and well-being by seeking an adjudication against *both* parents." *Id*. at 421-422. "[D]ue process requires a specific adjudication of a parent's unfitness before the state can infringe the constitutionally protected parent-child relationship." *Id*. at 422.

The trial court assumed jurisdiction over respondent-father's minor children pursuant to MCL 712A.2(b), which provides, in pertinent part, that a trial court has jurisdiction concerning a juvenile:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . . .

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

In the instant case, we conclude that the trial court clearly erred by assuming jurisdiction over AQ under MCL 712A.2(b)(1) and (2). At the time the petition regarding AQ was filed on August 4, 2023, the fundamental allegation leading to the removal of AQ was respondent-father's violation of a court order governing respondent-mother's parenting time. The violation occurred when respondent-father, without petitioner's supervision, took AQ with him to visit respondent-mother in the hospital following the birth of TQ and WQ. While respondent-father's conduct was improper given respondent-mother's extensive substance use, the previous incident involving AQ's exposure to unlawful substances, and the court order requiring supervised visitation, the isolated incident alone did not warrant adjudication. During the adjudicatory trial, Joel Herman, a CPS investigator, expressed his concerns regarding the hospital visit because respondent-mother possessed drug paraphernalia when she was in the hospital with AQ during his medical emergency. Herman, however, acknowledged that during supervised visitations overseen by petitioner, respondent-mother's belongings were not subject to a search, indicating that respondent-mother may have carried such paraphernalia in a petitioner-approved setting. Furthermore, the contested visit occurred in a public, regulated setting after the birth of AQ's siblings, and respondent-father remained present throughout the entirety of the interaction between respondent-mother and AQ.

Notably, after the incident leading to AQ's hospitalization for amphetamine intoxication, AQ was placed with respondent-father for approximately six months with no noted interactions with respondent-mother, with the exception of the hospital visit. This Court previously observed that "[a]lthough there is certainly evidence enough to support that respondent has not been a model parent, the fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents[.] " *In re Kellogg*, 331 Mich App 249, 258; 952 NW2d 544 (2020) (quotation marks, citations, and alteration brackets omitted).

Before AQ was placed with respondent-father, Herman assessed respondent-father's home and completed a background check on him in order to determine whether it was appropriate for respondent-father to acquire custody of AQ. Herman did not voice any concerns regarding substance use or exposure of AQ to illegal substances. AQ was under respondent-father's care from March 2023 until August 2023, and Herman had difficulties contacting respondent-father on only three occasions for purposes of completing welfare checks. During one instance, Herman contacted law enforcement to execute a welfare check as respondent-father had not responded to Herman for a few days, but the results of the welfare check revealed no concerns regarding AQ's wellbeing. Herman eventually requested that respondent-father be designated a "respondent" in subsequent petitions due to difficulties communicating with him; however, when Herman interacted with AQ, there were no visible signs of neglect or abuse. Herman testified that there was a substantial risk of harm to AQ if returned to respondent-father's care because, despite Herman explaining the restrictions governing interactions with respondent-mother, respondent-father expressed that "mom isn't a bad mom," and he continued planning with respondent-mother in regard to the children. But considering that AQ was under one year of age at the initiation of the child protective proceedings, that respondent-mother was pregnant with TQ and WQ, and that her parental rights remained intact at that time, the fact that respondent-father planned for the minor children with respondent-mother was understandable. Moreover, respondent-father expressed his dismay with respondent-mother's actions. He noted concerns regarding "mom's substance usage as well as that [AQ] was currently in the hospital for seizures and then also had tested positive for methamphetamines and amphetamines."

Also, in determining that it was proper to assume jurisdiction over AQ under MCL 712A.2(b)(1), the trial court erred by considering as a neglectful act respondent-father's participation in the second unsupervised visitation with respondent-mother at the Turquoise Drive residence on August 7, 2023, which occurred *after* the filing of the August 4, 2023 petition regarding AQ. This Court has expressly stated that "the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App at 279. In *In re Dearmon*, 303 Mich App 684, 698; 847 NW2d 514 (2014), this Court explained:

> The purpose of an adjudication is to determine whether the child is neglected within the meaning of MCL 712A.2(b). Ultimately, the question presented to the jury is whether a respondent's actions or inactions created an unfit environment for the children. A fact-finder may consider evidence gathered after the events cited in the petition if that evidence is relevant to a fact of consequence flowing from that question and otherwise admissible. Respondent's recorded

conversations with Long related to her credibility and whether she had severed her relationship with Long before the third assault. That the evidence arose after the date of the petition did not render it irrelevant to issues of consequence to the action. . . . .

*In reaching this holding, we highlight the important distinction between evidence of an event supporting jurisdiction that was not alleged in a petition and evidence obtained after the petition was filed. Because the petition communicates to the respondent the specific charges that he or she faces, a court must not entertain evidence of neglectful acts that fall outside the petition's allegations.* [Quotation marks, citation, alteration brackets, and ellipsis omitted; emphasis added.]

Accordingly, the improper visitation with respondent-mother on August 7, 2023, could not be considered by the trial court with respect to its findings regarding whether petitioner established, by a preponderance of the evidence, a neglectful act supporting grounds for jurisdiction under MCL 712A.2(b)(1). Therefore, the trial court erred when it assumed jurisdiction over AQ under MCL 712A.2(b)(1).

Regarding MCL 712A.2(b)(2), there was no evidence that respondent-father provided AQ with an improper home environment; rather, the evidentiary record indicated that respondent-father's home assessment yield positive results, that he did not have any criminal record or substance use issues, and that other than the occasional delayed communication from respondent-father, no notable concerns arose during welfare checks on AQ. See *Long*, 326 Mich at 462 (noting that the trial court erred by exercising jurisdiction under MCL 712A.2[b][2] when there were no allegations that the home of the child's maternal grandmother was an unfit place for the minor child to live, which is a required finding before the trial court may assume jurisdiction under MCL 712A.2[b][2]). In light of these circumstances, the trial court erred when it exercised jurisdiction over AQ under MCL 712A.2(b)(2).

The trial court further erred by exercising jurisdiction over TQ and WQ under MCL 712A.2(b)(1) and (2). During the adjudicatory trial, the court opined that under the doctrine of anticipatory neglect, respondent-father demonstrated that he was unable to properly provide for the care and custody of TQ and WQ in light of respondent-father's improper supervision of AQ. "In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction." *Kellogg*, 331 Mich App at 259. "The doctrine of anticipatory neglect recognizes that how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks, citations, and alteration brackets omitted). As petitioner here failed to establish by a preponderance of the evidence one or more of the statutory grounds to assume jurisdiction over AQ, it would lack logic to conclude that the trial court properly applied the doctrine of anticipatory neglect to obtain jurisdiction over TQ and WQ under MCL 712A.2(b)(1) and (2) without further evidence.

Between the filing of the petition regarding AQ and the filing of the subsequent petition concerning TQ and WQ, there was the second incident involving respondent-father's actions in allowing AQ to interact with respondent-mother without petitioner's supervision. As noted earlier, on August 7, 2023, AQ was considered AWOLP, and petitioner subsequently discovered that respondents were with AQ at the Turquoise Drive residence, where AQ was previously exposed to various substances resulting in his hospitalization. During the incident at the Turquoise Drive residence, Herman purportedly contacted law enforcement because respondents "had barricaded themselves in the house and were refusing to come out and to bring the child[,]" resulting in officers escorting respondents and AQ out of the home. Notably, Herman never filed a petition detailing any alleged barricade or involvement of law enforcement during the aforementioned incident. Nor did he otherwise mention the matter in a previous hearing, and there was no testimony by any other caseworker pertaining to a barricade. Further, no police report associated with the matter was introduced.

While the incident is certainly concerning, the instant circumstances are markedly distinct from prior cases when this Court has concluded that the doctrine of anticipatory neglect was properly applied to warrant adjudication of a respondent's other children. See *In re Sluiter*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368266); slip op at 15 ("While the evidence of domestic violence primarily concerned violence targeting respondent-mother and the mother of respondent's older children, there was at least some evidence of abuse against one of the children, thus coming within the principle of anticipatory neglect"); see also *Mota*, 334 Mich App at 323 (under the doctrine of anticipatory neglect, "[w]e cannot conclude that the trial court clearly erred by finding that this single act of sexual abuse that resulted in physical injuries revealed a side of respondent that posed a serious danger to his minor children"); *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004) (concluding that the doctrine of anticipatory neglect was applicable to confer jurisdiction over the two minor children on the basis of previous physical abuse to the minor children's half-sibling).

Moreover, as previously noted, the evidentiary record does not indicate that respondent-father's home environment was unfit as required for establishing jurisdiction under MCL 712A.2(b)(2). Furthermore, in its broader examination of the case, the trial court implicitly superimposed respondent-mother's misconduct on respondent-father in order to exercise jurisdiction over all three minor children, without properly iterating an independent basis for each of the necessary findings. See *Sanders*, 495 Mich at 422 ("The Constitution does not permit the state to presume rather than prove a parent's unfitness solely because it is more convenient to presume than to prove.") (quotation marks and citation omitted). The trial court extensively focused on respondent-mother's substance use and her improper behavior throughout the child protective proceedings to establish, in part, respondent-father's unfitness as a parent to AQ, TQ, and WQ. The trial court additionally failed to consider, in its anticipatory-neglect analysis, that TQ and WQ were hospitalized at the time of the filing of the August 31, 2023 petition, and that they remained in the NICU until October 2023. Accordingly, we hold that the trial court clearly erred when it exercised jurisdiction over all three minor children where petitioner failed to establish by a preponderance of the evidence at least one statutory ground for jurisdiction under MCL 712A.2(b).

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro