*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILLIAMS, Minors.

UNPUBLISHED
March 18, 2025
12:15 PM

Nos. 371825; 372081
Kent Circuit Court
Juvenile Division
LC Nos. 23-051490-NA;
23-051491-NA; 23-051492-NA;
23-051493-NA; 23-051494-NA

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Petitioner, the Department of Health and Human Services, appeals the trial court's order denying jurisdiction over the minor children in this matter under MCL 712A.2(b)(1) (neglect or refusal to provide proper or necessary support, education, medical, surgical, or other care for the children) and MCL 712A.2(b)(2) (an unfit home or environment because of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On August 10, 2023, petitioner filed a petition pursuant to MCL 712A.2(b)(1) (neglect or refusal to provide proper or necessary support, education, medical, surgical, or other care for the children) and MCL 712A.2(b)(2) (an unfit home or environment because of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent). Petitioner asserted that one of the five minor children tested positive at birth for cocaine, opiates, amphetamine, methamphetamine, and THC, and that respondents medically neglected a sixth minor child, who was found dead in his crib after his trach tube had become detached and he was not connected to his pulse oximeter. Further, respondents' "home's condition was neglectful" and "suspected drugs were observed sitting on the counter in the apartment." Respondents also had a history of substantiated investigations by Children's Protective Services (CPS). The petition went on to detail the circumstances of the minor child's death. However, the petition made no further mention of the other minor children, their condition, or the level of care provided by respondents.

At the contested hearing, evidence was heard by the trial court relative to the chronic lung condition and need for consistent supervision of the deceased minor child. Testimony revealed that the deceased minor child had shown a pattern of losing weight to such an extreme that hospitalization was necessary to bring the minor child's weight up. However, the in-home nurses reported that, at least as it appeared to them, the baby formula in respondents' residence was "being used at an appropriate rate, so it did seem like [the deceased minor child] was being fed."

Dr. Stephen Chole testified that he was the medical examiner for Kent County and that he performed the autopsy of the deceased minor child, concluding that the minor child's death was the result of "extreme prematurity, which included severe lung disease," and that his trach tube was not in place, inhibiting his ability to breathe, causing death within two or three minutes. Detective Stephen Wiersma of the Grand Rapids Police Department testified that, on August 4, 2023, he responded to a call of a child death. He testified that the deceased minor child's breathing tube become displaced, and he was unresponsive. Detective Wiersma also testified that the condition of the apartment:

> was very messy and unkempt in—in all the rooms. The kitchen had a lot of liquor bottles and just a lot of garbage around the—the apart—the apartment. The child's bedroom had, like, the packs from the—the feeding contents that were still, like, just kind of laying on the floor. Yeah. It was just—it was not—it was not what I would consider a clean or well-kept residence.

Lisa Leavenworth testified that she is an investigator for CPS and that she was assigned the investigation of respondents' family following the death of the minor child. When she arrived at the residence, she observed a "handful of just clumpy, powdery substance sitting on the—the ledge between the kitchen and the living room," which was brown in color, and respondent-mother draped a paper towel on top of that substance, asserting that it was merely trash. Marijuana-related "things" were also found in the home. Respondents were asked to complete a drug screen, but respondents refused unless obligated to do so.

Evidence was presented from CPS and DHS workers who told of prior court interventions with the family.[1] However, the workers who testified to prior interactions testified that the family had corrected their behavior to such a degree that the cases were closed as the minor children were all healthy. Evidence was presented that one of the minor children appeared to be sick at the time, however, no additional evidence was presented regarding the condition of respondents' residence or the health of the minor children. No other evidence was presented regarding respondents' ability to care for the minor children.

Petitioner requested that the trial court assume jurisdiction over the minor children pursuant to "the provisions MCL 712A.2d 1 through 6," despite the petition being brought pursuant to MCL 712A.2(b)(1) and (2). The trial court disagreed, stating that simply because respondents'

---

[1] Petitioner merely presented evidence of Children's Protective Services' numerous investigations into respondents, of which six were substantiated, four of which resulted in petitions for removal, and all of which were dismissed by the trial court.

residence "wasn't the most tidy of homes" did not support finding a statutory basis for jurisdiction. Furthermore, the trial court noted that, contrary to petitioner's argument, "the Court actually looked at the time" from the body worn camera footage and concluded it did not take respondent-mother "minutes to find" [the deceased minor child's] medical equipment stored in the closet; "[s]he knew exactly where it was in the closet." The trial court concluded that the evidence presented by petitioner only applied to the deceased minor child and had no bearing on respondents' ability to care for the surviving minor children: there was no evidence presented that would establish the other minor children would be in harm's way if they remained with respondent-mother.

Petitioner now appeals.

## II. STANDARD OF REVIEW

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009) (quotation marks and citation omitted).

## III. JURISDICTION PURSUANT TO MCL 712A.2(b)(1) AND (2)

Petitioner asserts that the trial court erred by not acknowledging that a preponderance of the evidence indicated that respondents demonstrated negligence in their care of their deceased child. Furthermore, petitioner highlights that respondents have previously been subject to investigations by Children's Protective Services, thereby invoking the anticipatory-neglect doctrine in this context. Additionally, petitioner argues that the state of the respondents' apartment provided adequate grounds for the trial court to establish jurisdiction.

"Child protective proceedings consist of two distinct phases: the trial, also known as the adjudicative phase, and the dispositional phase." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). The adjudicative phase, which occurs first, is when the "trial court determines whether it may exercise jurisdiction over the minor child pursuant to MCL 712A.2(b)." *Id*. at 16. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App at 295. The relevant statute, MCL 712A.2, "speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). "During the adjudicative phase, a trial may be held to determine whether any of the statutory grounds alleged in the petition have been proven." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006).

"Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App at 295. A "preponderance of the evidence" means evidence of a proposition that when weighed against the evidence opposed to the proposition "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). "If the court acquires jurisdiction over the child, the dispositional phase follows, at which the trial court determines what action, if any, will be taken on behalf of the child." *In re Utrera*, 281 Mich App at 16 (quotation marks and citation omitted).

In pertinent part, MCL 712A.2 states:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

For jurisdiction to be established pursuant to MCL 712A.2(b)(2), there must be allegations, and a preponderance of the evidence supporting, that a respondent's home is an unfit place for the minor child to live. *In re Long*, 326 Mich App 455, 461; 927 NW2d 724 (2018).

"In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020), citing *In re BZ*, 264 Mich App at 296. "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted; emphasis added). "This doctrine inherently acknowledges that no actual detrimental act has occurred." *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021). "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded in part on other grounds *In re Hansen*, 285 Mich App 158, 163; 774 NW2d 698 (2009). "Yet, even though jurisdiction may be properly assumed on the basis of the anticipatory-neglect doctrine, that does not also mean that it will always be sufficient." *In re Kellogg*, 331 Mich App at 259. The anticipatory-neglect doctrine allows for an inference that a parent's treatment of one child is probative of how that parent might treat other children, but "the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *Id*.

Relative to MCL 712A.2(b)(2), the record is clear that petitioner did not provide substantial evidence or expert testimony to demonstrate that the respondents' residence was an unsuitable environment for a minor child. As referenced in *In re Long*, 326 Mich App at 461, the only evidence presented by the petitioner indicated that the apartment was cluttered, which does not satisfy the preponderance-of-the-evidence standard. Accordingly, the trial court was correct in concluding that the petitioner failed to meet its burden of proof.

Relative to MCL 712A.2(b)(1), the evidence submitted by the petitioner was limited solely to the decedent's medical needs, the medical care received, and the cause of death. There was a notable absence of evidence regarding the care and living conditions of the other minor children involved in this case. Additionally, the anticipatory-neglect doctrine is not convincingly applicable here, especially given the significant medical needs of the decedent rather than those of the other children.

As it pertains to MCL 712A.2(b)(1), petitioner only presented evidence regarding the decedent's medical needs, medical care, and cause of death. Petitioner failed to present any evidence regarding the care or conditions of the other minor children in this matter. Furthermore, the anticipatory-neglect doctrine is not persuasive in this matter, given the significant medical needs that the decedent had, and no evidence was presented establishing that any of the other minor children had the same required level of care. The anticipatory-neglect doctrine is not an absolute method for establishing jurisdiction; instead, it is a permissible inference whose weight may shift considerably depending on the facts in a given matter. In this case, given the lack of evidence presented by petitioner, the trial court had no other choice than to attribute very little weight to the anticipatory-neglect doctrine, and the trial court did not clearly err by doing so. See *In re HRC*, 286 Mich App at 459.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick